## 38289. COOPER v. THE STATE.

GREGORY, Justice.

William Cooper was convicted of the murder of Ossie Lee Lewis and sentenced to life imprisonment. The evidence presented at trial showed that on the night of the victim's death, the defendant and the victim were at Adam's Lounge, a pool hall and tavern located in Dooly County. The victim and Charlie C. Daniels were engaged in a discussion outside the tavern. The defendant and Beatrice Lucas were sitting in the defendant's car in the parking lot at Adam's Lounge. Lucas testified at trial that, after observing Daniels and the victim for a few moments, the defendant reached under the car seat, pulled out a gun and stated, "I done told [him] about that." The

defendant then approached the victim and Daniels, and according to Daniels' testimony, asked Daniels to leave the tavern with him. Daniels testified that the victim told the defendant he was going to kill the defendant and then touched the outside of his left pants pocket, making "a tingling sound ... like change ... or car keys ... or a handle on a gun clicked or something." Daniels testified that when shortly thereafter he heard gunshots, he ducked behind defendant's car. Other witnesses testified that they heard three shots ring out, then saw the victim turn away from the defendant, stumble into the tavern and make his way to the men's rest room. One witness testified that, prior to firing his gun, the defendant asked the victim, "Didn't I tell you I would kill you?" Kathryn Turner testified that the defendant followed the victim into the tavern and "hollered" at him to come out of the rest room stating that he would "get" the victim if he had to "pour gas on" him to do so. The bartender at Adam's Lounge testified that he found the defendant in the men's room attempting to kick down the door to the stall in which the victim had locked himself. The defendant complied when the bartender demanded that he leave the premises.

The victim was dead on arrival at the Dooly County Medical Center. Medical testimony indicated that the victim died of a gunshot wound in the left lateral chest area. The attending physician testified that the entry path of the bullet was located "toward the victim's back."

The defendant took the witness stand in his own behalf and testified that the victim was hostile toward him because he had given the victim's ex-wife an engagement ring. The defendant testified that the day before the victim's death the victim had confronted him and warned the defendant to stop seeing the victim's ex-wife. According to the defendant, the victim threatened him with a pistol at this time. The defendant further testified that, on the night of the victim's death, the victim threatened to kill him outside of Adam's Lounge; that "he went to reach his hand in his pocket ... I didn't know whether he had a gun or what, so I pulled mine out of my back pocket ... [and] ... fired one shot over his head." The defendant denied shooting the victim, testifying that he had fired a total of three times, once over the victim's head, and twice "in the dirt." The defendant also testified that when he followed the victim into Adam's Lounge he did not know that the victim had been shot; he denied stating that he intended to "get" the victim even if he had to "pour gas on" him. The defendant stated that after he left Adam's Lounge he threw the pistol in a nearby creek. Despite a search by law enforcement officials, the gun was never recovered. No weapon was found on the body of the victim.

(1) The defendant argues that the trial court erred in denying his motion for new trial on the ground that the evidence is not sufficient to support the verdict.

(a) Initially the defendant contends that testimony of two of the State's witnesses conflicts with other evidence presented such that it undermines the State's case. Specifically defendant points to the testimony of Beatrice Lucas that the shooting took place at approximately 10:00 p.m. when in actuality the victim "was pronounced dead at 9:08 p.m." The defendant also notes that one witness for the State testified that all three shots were fired "at one time" which conflicts with evidence presented by the defense.

"The credibility of a witness is a matter to be determined by the jury under proper instructions from the court." Code Ann. § 38-1805. *Gresham v. State,* 246 Ga. 574 (272 SE2d 308) (1980); *Turner v. State,* 235 Ga. 826 (221 SE2d 590) (1976). The trial court in this case gave an ample and appropriate charge on the factors the jury should consider in determining the credibility of witnesses and reconciling inconsistencies in their testimony. We find no error.

(b) Defendant also contends that the evidence of justifiable homicide in this case demands a verdict of acquittal under Code Ann. § 26-902 (a). This section provides: "A person is justified in threatening or using force against another when and to the extent that he reasonably believes such threat or force is necessary to defend himself or a third person against such other's imminent use of unlawful force; however, a person is justified in using force which is intended or likely to cause death or great bodily harm only if he reasonably believes that such force is necessary to prevent death or great bodily injury to himself or a third person, or the commission of a forcible felony."

The defendant testified that he acted in self-defense, firing his gun because he believed "such force [was] necessary to prevent . . . great bodily harm to himself." The trial court instructed the jury that if they found the defendant acted in self-defense they were required to return a verdict of not guilty. It is clear, however, that the jury chose not to believe the defendant's testimony that he had killed the victim in self-defense. While the evidence in this case is not without conflict, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the [defendant guilty of the crime of murder] beyond a reasonable doubt." Jackson v. Virginia, 443 U. S. 307, 319 (99 SC 2781, 2789, 61 LE2d 560) (1979); *Young v. State,* 243 Ga. 546 (255 SE2d 20) (1979); *Kyles v. State,* 243 Ga. 490 (255 SE2d 10) (1979). We, therefore, find this enumeration of error to be without merit.

(2) Defendant also argues that the trial court erred in not

permitting him to question a witness concerning the victim's general reputation in the community for violence, "namely [his reputation] for carrying a gun." Defendant concedes that "the mere carrying of a gun, standing alone [does not] establish a reputation for violence." However, he urges that "all the surrounding circumstances should be considered" and the trial court should admit evidence of those circumstances which bear on the case.

On direct examination, Charlie C. Daniels, a defense witness, testified that he had never seen the victim in possession of a gun. The defense then inquired whether Daniels knew of the victim's reputation for carrying a gun. The State objected and the trial court sustained the objection, stating that as there had been no evidence presented of "violent aggression" on the part of the victim, evidence of the violent character of the deceased was premature. The trial court then instructed the defendant that "you may well want to develop [evidence that the victim was the aggressor] if you can." However, defendant stated that he had no more questions of the witness.

Defendant now argues that the trial court's refusal to let him ask this question "deprived him of his right to . . . illustrate to the jury his reasonable belief that the deceased intended to and had the capacity to shoot him."

"Generally, the character of the victim in a murder trial is inadmissible. *Henderson v. State,* 234 Ga. 827 (1) (218 SE2d 612) (1975); Code Ann. § 38-202." *Smith v. State,* 247 Ga. 453, 455 (276 SE2d 633) (1981). The victim's general reputation for violence has been held to be admissible only when the defendant makes a prima facie showing that the victim was the aggressor; that the victim assaulted defendant; and that defendant was honestly seeking to defend himself. *Curtis v. State,* 241 Ga. 125, 126 (1) (243 SE2d 859) (1978). *Milton v. State,* 245 Ga. 20, 22 (262 SE2d 789) (1980). In order to prove that the deceased had a "general reputation for a specific type of violence," these three criteria must be met. *Henderson v. State,* 234 Ga. 827, 828 (218 SE2d 612) (1975).

At the time the defendant attempted to establish the victim's reputation for carrying a weapon, the defendant's evidence showed that he had approached the victim armed with a gun and that the victim had verbally threatened to kill him before touching the outside of his pants pocket. The defendant then fired his weapon three times. We cannot say this evidence, standing alone, is sufficient to establish prima facie that the victim was the aggressor or that the defendant was honestly seeking to defend himself. Further, when afforded the opportunity by the trial court to offer evidence that the victim had been the aggressor, the defendant declined to do so. We

conclude that the trial court did not err in refusing to permit this line of questioning.

*Judgment affirmed. All the Justices concur.*

DECIDED FEBRUARY 17, 1982.

*A. Frank Grimsley,* for appellant.

*Gary Christy, District Attorney, J. Anderson Harp, Assistant District Attorney, Michael J. Bowers, Attorney General, Virginia Jeffries,* for appellee.