## S04A1259. DYER v. THE STATE.

(604 SE2d 756)

SEARS, Presiding Justice.

The appellant, Vincent Dyer, appeals from his conviction for the malice murder of Mohamed Al Dowsari.[1] On appeal, Dyer contends, among other things, that the trial court erred in its charge on self-defense, erred by ruling that a police detective did not improperly question Dyer after he invoked his right to counsel, and erred by ruling that two pre-trial statements were voluntary. Because we conclude that these contentions, as well as Dyer's other contentions, are without merit, we affirm.

1. The evidence shows that Dyer was a drug supplier for Dowsari. On the evening of August 17, 2002, Dowsari was found dead at his apartment. He had been shot several times and died from a gunshot to the back of the head. Around noon that same day, Dyer went to an emergency room, which was located near Dowsari's apartment, for treatment for a gunshot wound to his wrist. The bullet had entered the top of Dyer's wrist and had exited on the bottom. Dyer told a nurse that he had been robbed at gunpoint by two men after he withdrew money from an ATM, and that a Hispanic man had shot him. The police arrived a few minutes later, and according to the nurse, Dyer started to get "more and more nervous." Dyer told one police officer the same story about the ATM, but stated that the gunman was African-American and that a second person in the car was of Middle-Eastern descent. Dyer told a second officer that he was shot while being robbed at an ATM, but that both robbers were African-American. Moreover, Dyer told a nurse and the police officers that he had held up his hands, palms out, when he was shot. This description, however, was inconsistent with the entry wound in the top of Dyer's wrist. After speaking with Dyer at the hospital, officers immediately went to the ATM where Dyer said the robbery occurred. The officers testified that the ATM is on a busy street with neighboring businesses, but that no one there had heard a shot, and that no shell casing or blood was found at the site.

---

[1] The crimes occurred on August 17, 2002. Dyer was indicted on January 24, 2003, for malice murder, felony murder, and possession of a firearm during the commission of a certain crime. On September 25, 2003, a jury found Dyer guilty on all three counts of the indictment. The court reporter completed certification of the transcript on October 16, 2003. On October 29, 2003, the trial court sentenced Dyer to life in prison for malice murder and to five consecutive years in prison on the possession offense. The trial court merged the felony murder conviction with the conviction for malice murder. Dyer obtained new counsel for appeal, and on November 25, 2003, Dyer filed a motion for new trial. Dyer amended his motion for new trial on January 7 and January 9, 2004. The trial court denied the motion for new trial, as amended, on January 13, 2004. Dyer filed a notice of appeal on February 10, 2004, and the appeal was docketed in this Court on April 2, 2004. The appeal was orally argued on June 21, 2004.

About ten days after Dowsari was shot, Detective Larry Szeniawski of the Cobb County Police Department learned that the blood of someone other than Dowsari had been found at Dowsari's apartment. Szeniawski obtained a search warrant for Dyer's blood, and arranged to interview Dyer about the shooting at Dowsari's apartment. When interviewed by Szeniawski, Dyer first invoked his right to counsel, but according to the detective, Dyer then changed his mind, and initiated a conversation about Dowsari's killing. Dyer stated that he went to Dowsari's apartment to sell him drugs, but that a third party came into the apartment and shot Dyer and Dowsari. Later that same day, Dyer gave a second statement to Szeniawski, telling him that he went to Dowsari's apartment to sell him cocaine; that Dowsari was dissatisfied with the cocaine; that Dowsari took out a gun; that during a struggle, Dyer was shot; and that Dyer took the gun from Dowsari and shot him in the head. Although the court denied Dyer's motion to suppress the statements that he made to Szeniawski, the State did not introduce those statements during the presentation of its case-in-chief. The State did, however, question Dyer about portions of the statements on cross-examination.

At trial, Dyer testified that he went to Dowsari's apartment to sell him cocaine; that he smelled alcohol on Dowsari's breath; that Dowsari's eyes were dilated and "glassy-looking"; that this was characteristic of someone on cocaine; that after Dyer put the cocaine on the kitchen counter, Dowsari pulled out a gun and shot Dyer in the arm; that Dyer charged Dowsari to disarm him; that Dyer grabbed the gun; that Dowsari ran at him and tried to tackle him; that Dyer tried to push Dowsari on a sofa; and that the gun "went off." Dyer added that the bullet struck Dowsari in the head; that he (Dyer) did not intentionally pull the trigger; that the shooting was an accident; and that he did not intend to shoot Dowsari.

Forensic evidence established that Dyer's blood was found at Dowsari's apartment. The State's medical examiner also testified that the injury to Dyer's wrist was consistent with a bullet wound to Dowsari's shoulder. The medical examiner testified that the bullet had only penetrated Dowsari's shoulder about one-half inch, and that the bullet had probably struck some other object, such as Dyer's wrist, before entering the shoulder. The medical examiner added that Dowsari's hands showed no signs of a struggle, and that if a person is fighting for his life over an object, his hands usually will be marked in some fashion. Several police officers testified that Dowsari's apartment showed no signs of a struggle. They stated that a sofa near Dowsari was squared up against the wall and did not appear to have been disturbed. They added that Dowsari was lying near a file cabinet that had a number of small items on top of it, but that neither the file cabinet itself nor the items on top had been disturbed.

Having reviewed the evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could have found Dyer guilty of murder beyond a reasonable doubt.[2]

2. Dyer contends that the trial court harmed his claim of self-defense by charging the jury that a "person is not justified in using force if that person is attempting to commit or is committing a felony."[3] We conclude, however, that, even if the trial court erred in giving the charge, the error was harmless, as Dyer's testimony at trial — recounted above — established a claim of accident but not of self-defense.[4]

3. Dyer next contends that the trial court erred by ruling that Detective Szeniawski did not violate *Edwards v. Arizona*[5] before Dyer made his first statement to the detective and by ruling, instead, that Dyer voluntarily initiated questioning after he had invoked his right to counsel. Dyer also contends that the trial court erred by ruling that his two statements to Detective Szeniawski were voluntary. For the reasons that follow, we find no merit to these contentions.

First, as for the alleged violation of *Edwards*, the State did not introduce Dyer's first statement in its case-in-chief, but instead used it for impeachment purposes when cross-examining Dyer. Because the State is permitted to use a voluntary statement for impeachment purposes even if a violation of *Edwards* has occurred,[6] and because we conclude that Dyer's statement was not involuntary, it is unnecessary for us to decide whether Dyer's first statement was obtained in violation of *Edwards*. In this regard, Dyer contends that both of his statements to Detective Szeniawski were involuntary because the detective told him that he was going to have blood "sucked" out of Dyer's arm and that, if Dyer's blood matched the blood other than Dowsari's blood that was found at Dowsari's apartment, the detective was going to arrest Dyer for murder. We conclude that these statements did not render Dyer's statements involuntary. Although the detective used descriptive language regarding how blood would be taken from Dyer's arm, the detective initially told Dyer that the detective had a search warrant for Dyer's blood and that the detective was going to take Dyer to a hospital to have his blood drawn. Because it is common knowledge how a hospital draws blood from a patient, we cannot conclude that the detective's use of the word "suck" would

---

[2] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[3] This charge tracks the language of OCGA § 16-3-21 (b).

[4] *Byrd v. State*, 277 Ga. 554, 559-560 (592 SE2d 421) (2004); *Anderson v. State*, 262 Ga. 331, 332-333 (418 SE2d 39) (1992).

[5] 451 U. S. 477 (101 SC 1880, 68 LE2d 378) (1981).

[6] *Taylor v. State*, 274 Ga. 269, 271-272, n. 3 (553 SE2d 598) (2001); *Linares v. State*, 266 Ga. 812, 813 (471 SE2d 208) (1996).

have conveyed any threat of bodily harm. Moreover, the detective's warning that he would arrest Dyer if his blood matched that found at Dowsari's apartment was not a threat of personal harm and did not render Dyer's statements involuntary.[7] For these reasons, we cannot conclude that the trial court erred in ruling that Dyer's statements were voluntary.

4. Dyer contends that the trial court erred by failing to give the jury an instruction that it had the duty to determine the voluntariness of Dyer's statements. Although the trial court should have given the charge in question, we conclude that, given the strength of the evidence that the statements were voluntary, any error in failing to give the charge in question was harmless.[8]

5. Dyer contends that the trial court erred by admitting into evidence hearsay testimony by Detective Szeniawski regarding whether Dowsari or Dyer owned any weapons.

On direct examination by the prosecutor, the detective was asked whether he was able to determine whether Dowsari owned a gun. The detective answered that people who knew Dowsari told him they had no knowledge of Dowsari owning a gun. Defense counsel objected on the ground of hearsay, and the prosecutor instructed the witness not to state what anyone had told him. The detective then stated that he did not find any evidence that Dowsari owned a gun when he searched Dowsari's apartment. In this regard, the detective explained that he did not find any gun case, ammunition, holster, cleaning kit, or anything else that one would normally associate with owning a gun. Because the witness was instructed not to state what anyone had told him and because the witness stated that he found nothing in Dowsari's apartment to indicate that he owned a gun, we conclude that the officer's testimony did not unfairly prejudice Dyer and that a new trial is not necessary to preserve Dyer's right to a fair trial.[9]

As for Dyer's contention that Szeniawski gave inadmissible hearsay testimony that Dyer owned a gun, defense counsel made no objection to the testimony. Dyer is thus procedurally barred from raising the issue on appeal.[10]

6. Dyer's contention that the prosecutor engaged in prosecutorial misconduct in closing argument is procedurally barred, as Dyer did not raise any objection to the argument at trial.[11]

7. Dyer next contends that he received ineffective assistance of trial counsel. To prevail on this claim, Dyer has the burden to

[7] *Black v. State*, 274 Ga. 346, 347 (553 SE2d 818) (2001).

[8] *Robinson v. State*, 272 Ga. 752, 754 (533 SE2d 718) (2000).

[9] See *Stafford v. State*, 271 Ga. 620, 622-623 (523 SE2d 307) (1999).

[10] *Culler v. State*, 277 Ga. 717, 719 (594 SE2d 631) (2004).

[11] *Fulton v. State*, 278 Ga. 58, 62 (597 SE2d 396) (2004).

demonstrate that trial counsel's performance was deficient and that, but for that deficient performance, it is reasonably probable that the result of the trial would have been different.[12] We conclude, however, either that trial counsel did not provide deficient performance or that the alleged deficient performance did not prejudice the defense.

Dyer first contends that trial counsel provided deficient performance by failing to introduce at the *Jackson-Denno* hearing the transcripts or the videotapes of Dyer's interviews with Detective Szeniawski.[13] Dyer contends that the introduction of the transcripts or the videotapes would have led the trial court to conclude that Dyer's statements to the detective were involuntary, thus precluding the State from using them to impeach Dyer at trial. However, our examination of the record demonstrates that trial counsel liberally used the transcripts to question the detective about his interviews with Dyer, and that trial counsel brought forth the key statements by the detective regarding the voluntariness issue. We thus conclude that trial counsel did not perform deficiently in failing to introduce the transcripts or the videotapes into evidence at the *Jackson-Denno* hearing.

Dyer next contends that trial counsel provided deficient performance by failing to move for a mistrial when the prosecutor asked Detective Szeniawski if he was able to determine whether Dowsari owned a gun, and the detective testified that several people who knew Dowsari testified that he did not. However, even if trial counsel erred by failing to move for a mistrial, we conclude, for the reasons given in Division 5 of this opinion, that the error did not prejudice the defense.

Dyer also contends that trial counsel provided deficient performance by failing to move for a mistrial or by failing to move the trial court to strike what Dyer contends was the police detective's unresponsive hearsay testimony concerning Dyer's ownership of a gun. However, because trial counsel's failure to move for a mistrial or to strike the witness's answer may have been a strategic decision, and because Dyer did not question trial counsel concerning this decision, Dyer has failed to carry his burden to demonstrate that trial counsel provided deficient performance.[14]

Finally, we conclude that Dyer has failed to prove either deficient performance or prejudice with regard to his claim that trial counsel was ineffective for failing to object to a part of the prosecutor's closing argument.

---

[12] *Robinson v. State*, 277 Ga. 75-76 (586 SE2d 313) (2003).

[13] See Division 3 of this opinion.

[14] See *Holmes v. State*, 273 Ga. 644, 648 (5) (c) (543 SE2d 688) (2001).

8. Dyer contends that the trial court erred by denying his post-trial motion for funds for an independent psychiatric examination of his competency to stand trial. Dyer asserts that such an examination was necessary because he gave so many inconsistent answers while testifying at trial that it indicated that he may have been incompetent. Having examined the record, however, we cannot conclude that the trial court abused its discretion in denying Dyer's motion for funds for expert assistance.[15]

*Judgment affirmed. All the Justices concur.*

DECIDED OCTOBER 25, 2004 —
RECONSIDERATION DENIED NOVEMBER 22, 2004.

*Ruth P. Marks*, for appellant.

*Patrick H. Head, District Attorney, H. Maddox Kilgore, Dana J. Norman, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Frank M. Gaither, Jr., Assistant Attorney General*, for appellee.

*J. Guy Sharpe, Jr., James C. Bonner, Jr.*, amici curiae.

---

[15] See *Roseboro v. State*, 258 Ga. 39, 41 (365 SE2d 115) (1988).