## S04A2006. LEWIS v. THE STATE.
(608 SE2d 602)

SEARS, Presiding Justice.

Appellant Michael Lewis appeals his conviction for malice murder,[1] resulting in a life sentence. Having reviewed the record, we conclude that the trial court erred by: (1) allowing the prosecutor to make statements of prejudicial matters that were not in evidence; (2) allowing certain hearsay testimony concerning police officers' investigation of the victim's murder; and (3) giving a jury charge that was subsequently disapproved by this Court. In light of the overwhelming evidence of appellant's guilt (which included testimony by six witnesses to the crime), we conclude it is highly unlikely that these errors contributed to the jury's verdict. Therefore, we conclude that the errors were harmless. Having found appellant's remaining enumerations to be without merit, we affirm.

In January 1997, the victim, Darrell Woods, was riding in a car driven by his wife, with his two young sons in the back seat. The family stopped at an Atlanta convenience store, and Woods's wife went into the store while he waited in the car with his children. Appellant Lewis, who was then 13 years old, approached the car and exchanged words with Woods. Appellant then produced a rifle and shot Woods two times at point-blank range, killing him as his children watched. The murder weapon and identifying clothes were later discovered at appellant's mother's residence. Appellant (then age 14)

---

[1] The murder occurred on January 21, 1997. Appellant was indicted on February 18, 1997, and trial was held November 3-12, 1997. Appellant was found guilty of malice murder, felony murder and aggravated assault. On November 19, 1997, he was sentenced to life in prison for malice murder, with the aggravated assault conviction merging as a matter of fact and the felony murder conviction being treated as surplusage. Appellant's new trial motion was filed on December 18, 1997, and amended both on October 15, 2003, and March 24, 2003. Supplemental motions for new trial were filed on February 11, 2004, February 20, 2004, and February 23, 2004. Appellant's request for a new trial was denied on April 26, 2004. Appellant's notice of appeal was filed on May 25, 2004. The appeal was docketed on August 11, 2004, and argued before the Court on November 16, 2004.

was tried as an adult under OCGA § 15-11-28 (b) (2) (B), which vests the superior court with jurisdiction over children between the ages of 13 and 17 who are charged with certain crimes, including murder.

1. Having reviewed the record, we conclude the evidence was sufficient for rational triers of fact to find appellant guilty of murder.[2]

2. Appellant claims that OCGA § 15-11-28 (b) (2) (B), which permitted the State to try him in superior court, is (1) unconstitutional on its face and as applied; (2) constitutes cruel and unusual punishment; and (3) violated due process and equal protection. The transcript reveals, however, that appellant failed to raise these constitutional challenges during trial, although his new trial motion did include the first and second of these claims. All challenges to the constitutionality of a statute must be raised at the first available opportunity, and it is "too late to raise such questions after a guilty verdict has been returned by the jury."[3] Accordingly, these three enumerations are waived on appeal.

3. Appellant argues that the trial court erred by failing to sua sponte order a hearing to determine his competency to stand trial. Even where (as here) counsel does not pursue a claim of incompetency, if the evidence "indicat[es] incompetency during the trial, there [is] a duty on the trial judge to inquire into the issue of competency and hold a hearing. . . ."[4] In this case, appellant does not point to (nor have we found in the transcript) any instances during trial that should have signaled to the trial court that a competency hearing was necessary. Rather, appellant urges that due to his age at the time of the proceedings (14), it is likely that he was legally incompetent.

A defendant bears the burden of establishing incompetency to stand trial by a preponderance of the evidence, and this burden is consistent with principles of due process.[5] The threshold for competency is easily met in most cases; it exists so long as a defendant "is capable at the time of the trial of understanding the nature and object of the proceedings going on against him and rightly comprehends his own condition in reference to such proceedings, and is capable of rendering his attorneys such assistance as a proper defense to the indictment preferred against him demands."[6] A trial court has a sua sponte duty to inquire into a defendant's competence only when the evidence raises "a bona fide doubt" as to the defendant's competence.[7]

---

[2] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[3] *Kolokouris v. State*, 271 Ga. 597, 597-598 (523 SE2d 311) (1999).

[4] *Baker v. State*, 250 Ga. 187, 190 (297 SE2d 9) (1982).

[5] *Buttrum v. Black*, 721 FSupp. 1268, 1294 (N.D. Ga. 1989), aff'd, 908 F2d 695 (11th Cir. 1990).

[6] *Crawford v. State*, 240 Ga. 321, 326 (240 SE2d 824) (1977).

[7] *Pate v. Robinson*, 383 U. S. 375, 385 (86 SC 836, 15 LE2d 815) (1966).

In this case, nothing before us indicates that appellant was incompetent to stand trial; certainly nothing that should have signaled to the trial court that a sua sponte inquiry into competency was required. The record demonstrates that appellant understood the nature and object of the proceedings, participated in them and assisted counsel with his defense.[8] Appellant exhibited no unusual behavior during the proceedings and has not demonstrated that his age, standing alone, rendered him incapable of understanding and participating therein. Because nothing in the record rebuts the presumption that appellant was competent, we reject his claim that the trial court erred by failing to hold a competency hearing.[9]

Similarly, we decline appellant's request that we adopt a rule mandating competency hearings for children under 17 who face trial in superior court under OCGA § 15-11-28 (b) (2) (B). As a cautionary matter, it may be prudent for trial courts to hold competency evaluations for such juveniles. However, while the majority of states require comprehensive hearings to determine the suitability of transferring a youthful offender out of juvenile court, we are aware of only two states that require competency determinations before such a transfer is allowed.[10] Both those states have statutory schemes that are markedly different from that of Georgia. Any changes to Georgia's current statutory provisions for trying certain juvenile offenders as adults must come from the General Assembly, as this Court is not authorized to rewrite or revise provisions of the Code.[11]

4. Appellant's witness Pope testified that after the murder and before his arrest, appellant came to Pope's office and used a telephone to call his mother. Pope overheard the conversation, and testified that he did not hear appellant state that he had killed the victim. On cross-examination, the prosecutor asked Pope whether he was aware that, during the time between the shooting and appellant's arrest, appellant had told his mother that: "I didn't shoot that man, mama, three times, I only shot him twice." Appellant objected, and after an untranscribed bench conference, the prosecutor's question was allowed.

Appellant claims this question was improper under OCGA § 17-8-75, which provides that:

---

[8] See *Stevens v. State*, 267 Ga. 36, 37 (472 SE2d 426) (1996).

[9] Appellant also points to his below-average IQ rating and school records, which he claims indicate developmental delay, as evidence of his incompetence. In the face of evidence that appellant comprehended the nature of and participated in the trial court proceedings, however, these two factors do not, standing alone, establish incompetence.

[10] See Nev. Rev. Stat. § 62B.390 (2004); Tex. Family Code § 54.02 (2004).

[11] In fact, during the hearing on the motion for new trial, appellant conceded that "the decision whether . . . to proceed in adult court is pretty much set by the legislature."

> Where counsel in the hearing of the jury make statements of prejudicial matters which are not in evidence, it is the duty of the court to interpose and prevent the same. On objection made, the court shall also rebuke the counsel and by all needful and proper instructions to the jury endeavor to remove the improper impression from their minds; or, in [its] discretion, [the court] may order a mistrial if the prosecuting attorney is the offender.

This proscription applies both to counsel's arguments and to comments made by counsel during trial.[12]

In response, the State argues that its question was proper because counsel is permitted to explore specific acts of bad conduct when cross-examining a character witness in order to test that witness's knowledge of the defendant's reputation.[13] When doing so, counsel "must be able to show that the questions posed . . . were asked in good faith and based on reliable information that can be supported by admissible evidence. . . . [T]here is no requirement that the evidence available be actually admitted into evidence."[14] The State urges that its cross-examination of Pope was based upon a statement given by appellant's mother, in which she told police that during the phone conversation, appellant "[said] he think[s] he shot that man, but he said he only shot twice." Appellant's mother also stated that: "they say that man was shot three times. My son only shot twice. That's what he told me." These statements by appellant's mother were not admitted into evidence, but the State argues that they were admissible and thus provided a basis for its cross-examination of appellant's character witness, Pope.

The State's argument fails, however, because Pope clearly was not a character witness.[15] To the contrary, Pope was a fact witness, as his testimony was limited exclusively to his name, job position, and the facts surrounding his encounter with appellant at the time of the telephone call. Accordingly, the prosecutor's question (whether Pope knew that appellant had said he shot the victim two, not three, times), which was not supported by any evidence of record, was improper

---

[12] *Green v. State*, 242 Ga. 261, 266 (249 SE2d 1) (1978), rev'd on other grounds, 442 U. S. 95 (99 SC 2150, 60 LE2d 738) (1979).

[13] *Jones v. State*, 257 Ga. 753, 758, n. 8 (363 SE2d 529) (1988).

[14] *Skiver v. State*, 213 Ga. App. 424, 426 (444 SE2d 836) (1994); *Christenson v. State*, 261 Ga. 80, 90 (402 SE2d 41) (1991).

[15] Character witnesses are those that shed light upon a person's "propensity to act one way rather than another in certain situations." Such witnesses "relate facts about a person that would naturally lead one to conclude that the person was more or less likely to do a particular thing than the average person." Milich, Georgia Rules of Evidence, § 11.2, p. 135.

under OCGA § 17-8-75, and the trial court abused its discretion by allowing it.

A violation of OCGA § 17-8-75 results in a miscarriage of justice unless a reviewing court determines that it is highly probable the improperly admitted statement did not contribute to the verdict.[16] In this case, the transcript includes testimony from three eyewitnesses who told the jury that on the evening of the murder, they saw appellant aim a rifle into the victim's car and fire several shots. Two different witnesses testified that they heard the shots being fired, and then saw appellant running away from the scene; one of these witnesses testified that appellant carried a rifle as he ran. Another witness testified that immediately before the shooting, appellant said he was going to shoot the victim. After that, the witness took cover and heard several gunshots before running to the victim's car, where he discovered the victim's body.

There is no doubt that the prosecutor's comment regarding appellant's statement to his mother was both improper and prejudicial, and warranted a rebuke from the trial court. However, in light of the extraordinarily compelling evidence of appellant's guilt, we conclude it is highly unlikely that the statement actually contributed to the jury's verdict. Therefore, we conclude the trial court's allowance of the statement, though erroneous, was harmless.

5. Appellant claims the trial court improperly admitted hearsay testimony from two police officers regarding their investigation of the victim's murder, despite precedent limiting the use of — and a ruling in limine excluding[17] — such evidence. In several instances, the trial court allowed the officers to testify about information obtained from independent sources and to state that such information was consistent with the theory that appellant was responsible for the victim's murder. In one other instance, the trial court overruled appellant's objection to an officer's testimony that, based upon information he received early in the investigation, he was searching for a suspect nicknamed "Little B."[18]

It is rare that the conduct of a police officer will be relevant to the issues being tried in a criminal prosecution.[19] Such proceedings are

---

[16] *Johnson v. State*, 238 Ga. 59, 61 (230 SE2d 869) (1976).

[17] Having obtained a ruling in limine excluding such evidence, it was not necessary for appellant to raise an objection at trial when the evidence was introduced in order to preserve this issue for appellate review. *Reno v. Reno*, 249 Ga. 855, 856 (295 SE2d 94) (1982). See *Harley-Davidson Motor Co. v. Daniel*, 244 Ga. 284 (260 SE2d 20) (1979).

[18] Appellant also points to certain instances where his objections to the officers' testimony were sustained, but complains that no curative instructions were given to the jury. The record reveals, though, that no such instructions were requested. Hence, these enumerations are waived on appeal. *Barner v. State*, 263 Ga. 365, 366 (434 SE2d 484) (1993).

[19] See *Brown v. State*, 274 Ga. 31, 37 (549 SE2d 107) (2001).

concerned primarily with whether a defendant acted in a certain way, and it is "most unusual that [the] prosecution will properly concern itself with [whether and] why an investigating officer did something."[20] In this case, we discern nothing out of the ordinary that necessitated an inquiry by the State into the conduct, motive or mental processes of investigating officers. Appellant did not challenge the investigators' procedures, and made no allegations of impropriety. It follows that the trial court erred by admitting the officers' testimony regarding statements obtained from sources. That testimony was not relevant to the issue being tried. However, in light of the overwhelming evidence of appellant's guilt (which, as recounted above, included eyewitness testimony), it is highly unlikely that this improper evidence contributed to the jury's verdict. Thus, we conclude the error was harmless.[21]

As for the officer's testimony that early in the investigation, he learned from independent sources that he was searching for a suspect nicknamed "Little B," this evidence was relevant and therefore properly admitted. During trial, several witnesses referred to appellant by his nickname, and it was necessary to establish that "Little B" and appellant were one and the same person.

6. During closing arguments, the prosecutor twice improperly referred to appellant's pre-trial silence by asking the jury to consider why he never told investigating officers that he was innocent.[22] Appellant argues that in the face of these statements, the trial court should have declared a mistrial. While we believe the prosecutor clearly overstepped her bounds with these improper comments, we note that appellant's objection to the first comment was sustained, and the trial court took corrective measures which included instructing the jury to disregard the statement. Thus, reversible error did not result from the refusal to grant a mistrial.[23] Regarding the prosecutor's second statement, appellant's objection was again sustained, but neither a curative instruction nor a mistrial was sought. It is established that a sustained objection to an improper argument cannot serve as the basis for reversal unless it is contemporaneous with a denied motion for mistrial, denied request to strike or denied request for curative instructions,[24] none of which were interposed here. Hence, the trial court's failure to declare a mistrial in response

---

[20] *Brown*, 274 Ga. at 36.

[21] See *McLendon v. State*, 259 Ga. 778, 780 (387 SE2d 133) (1990).

[22] See *Hill v. State*, 250 Ga. 277, 282 (295 SE2d 518) (1982).

[23] *Wyatt v. State*, 267 Ga. 860, 865 (485 SE2d 470) (1997).

[24] See *Grice v. State*, 224 Ga. 376 (162 SE2d 432) (1968).

to the prosecutor's second improper statement is not grounds for reversal, either.[25]

7. Appellant urged that Mills, a drug dealer, was the actual shooter who killed the victim. The trial court limited appellant's cross-examination of Mills by excluding all questions about Mills' involvement in selling drugs. That ruling was proper, as the issue was irrelevant to the issues being tried.[26]

8. Although the trial court erred by instructing that the jury could "infer that a person of sound mind and discretion intends to accomplish the natural and probable consequences of his intentional acts and [when he] . . . uses a deadly weapon . . . in the manner in which [it] . . . is [usually] used and thereby causes [a] death . . . you may infer the intent to kill,"[27] the error was harmless in light of the overwhelming evidence of guilt.[28]

9. Appellant claims that trial counsel was ineffective for failing to challenge appellant's competence to stand trial; failing to adequately question prospective jurors; failing to raise objections to improper questioning by the State; and failing to seek a mistrial during closing arguments. In order to establish ineffectiveness, appellant must show both that counsel was deficient and that, but for the unprofessional errors, there is a reasonable probability that the trial's outcome would have been different.[29] The standard regarding ineffective assistance of counsel is "not errorless counsel and not counsel judged ineffective by hindsight, but counsel . . . rendering reasonably effective assistance. In determining what constitutes ineffective assistance, a critical distinction is made between inadequate preparation and unwise choices of trial tactics and strategy."[30]

At the hearing on appellant's motion for new trial, counsel testified that he initially sought funds for a psychological evaluation of appellant, based upon a belief that appellant's mental condition might be a significant factor at trial. During subsequent meetings with appellant, however, counsel observed nothing to suggest "low or even moderate intelligence," and concluded that appellant actually was quite intelligent and capable of assisting with his own defense.

---

[25] We have considered appellant's arguments that during closing statements, the prosecutor improperly made reference to the victim's family; made improper references to the concepts of reasonable doubt and the presumption of innocence; mentioned hearsay and prejudicial matters extrinsic to the record; improperly said that appellant was banking on the jury's sympathy; and improperly mentioned appellant's failure to call a witness. We find these arguments to be without merit.

[26] See *Palmer v. State*, 274 Ga. 796 (560 SE2d 11) (2002).

[27] *Harris v. State*, 273 Ga. 608 (543 SE2d 716) (2001).

[28] *Scott v. State*, 275 Ga. 305, 307 (565 SE2d 810) (2002).

[29] *Strickland v. Washington*, 466 U. S. 668, 694 (104 SC 2052, 80 LE2d 674) (1984).

[30] *Hudson v. State*, 250 Ga. 479, 486 (299 SE2d 531) (1983) (citation and punctuation omitted).

Appellant's counsel testified that if he believed a competency evaluation was required, he would have ensured one was conducted. As noted above, nothing in the record suggests that appellant was not competent to stand trial. Accordingly, we conclude counsel's decision not to conduct a competency evaluation of appellant was reasonable.[31]

Appellant also criticizes trial counsel's decision not to interpose objections to the State's eliciting of purported hearsay testimony from investigators. However, the transcript of the hearing on appellant's motion for new trial reveals that counsel's decision not to object was tactical in nature, based upon the fact that counsel's first objection to such testimony was overruled,[32] and also upon counsel's opinion that some of the testimony complained of was not improper. Whether these determinations were wise or unwise has no bearing on appellant's claim of ineffectiveness, as counsel's tactical decisions will not be judged in hindsight.[33]

For this same reason, we reject appellant's claim that trial counsel was ineffective during voir dire. Among other things, appellant argues that counsel failed to raise certain objections to the State's questioning of prospective jurors, failed to ask certain questions of prospective jurors, failed to rehabilitate certain prospective jurors, and failed to request curative instructions in response to certain comments made by prospective jurors. However, at the new trial hearing, counsel explained that his conduct during voir dire was based upon his total assessment of the prospective jurors' character, and a balancing of individual traits that may have been unfavorable to the defense with traits that may have benefitted the defense. In light of this testimony, we conclude that counsel's actions during voir dire were reasoned and strategic. As such, they do not support appellant's claim of ineffectiveness.

Finally, appellant claims that counsel was ineffective for failing to seek a mistrial in response to the prosecutor's second improper reference to appellant's pre-trial silence.[34] At the new trial hearing, counsel explained that when he first objected to this line of argument, his request for a mistrial was denied. When the prosecutor repeated her improper argument, counsel again objected, but did not believe it was necessary to renew his motion for a mistrial. As noted above, pretermitting any decision regarding the wisdom of that belief,

---

[31] See *Slade v. State*, 270 Ga. 305, 307 (509 SE2d 618) (1998).
[32] See Division 5, supra.
[33] *Hudson*, 250 Ga. at 486.
[34] See Division 6, supra.

counsel's tactical decisions will not be judged in hindsight.[35]

Based upon these determinations, we conclude that appellant has failed to overcome the strong presumption that trial counsel's representation fell within the range of effective professional representation. Accordingly, we reject appellant's claim of ineffective assistance of counsel.

*Judgment affirmed. All the Justices concur.*

DECIDED FEBRUARY 7, 2005 —
RECONSIDERATION DENIED MARCH 7, 2005.

*Thomas M. West, Amy G. Donnella,* for appellant.

*Paul L. Howard, Jr., District Attorney, Marc A. Mallon, Assistant District Attorney, Thurbert E. Baker, Attorney General, Vonnetta L. Benjamin, Assistant Attorney General,* for appellee.

*Davis, Zipperman, Kirschenbaum & Lotito, Nicholas A. Lotito, Brenda J. Bernstein, Celeste S. Jenks,* amici curiae.