S05A2101. TRAYLOR v. THE STATE.
(627 SE2d 594)

HINES, Justice.

Jarrett Traylor appeals his conviction for felony murder while in the commission of aggravated assault in connection with the fatal shooting of Matthew Antonio Stark and the denial of his motion for new trial in which he challenged his competency to stand trial. For the reasons which follow, we affirm in part and reverse in part and remand the case to the trial court.[1]

The evidence construed in favor of the verdicts showed that on September 12, 2002, Kenneth Robinson met Bryan Schiele and

---

[1] The shooting occurred on September 12, 2002. On December 5, 2002, a DeKalb County grand jury indicted Traylor for Count 1 – the malice murder of Matthew Antonio Stark; Count 2 – the felony murder of Matthew Antonio Stark while in the commission of the aggravated assault of Stark; Count 3 – the felony murder of Matthew Antonio Stark while in the commission of the aggravated assault of Kenneth D. Robinson; Count 4 – the felony murder of Matthew Antonio Stark while in the commission of the aggravated assault of Bryan Schiele; Count 5 – the aggravated assault of Matthew Antonio Stark; Count 6 – the aggravated assault of Kenneth D. Robinson; and Count 7 – the aggravated assault of Bryan Schiele. Traylor was tried before a jury March 4-7, 2003; he was acquitted of Counts 1, 3, 4, 6, and 7, and found guilty of Counts 2 and 5. On July 17, 2003, Traylor was sentenced to life in prison for the felony murder (Count 2); the trial court found that the aggravated assault (Count 5) merged for the purpose of sentencing. A motion for new trial was filed on August 13, 2003, and it was denied on June 3, 2005. A notice of appeal was filed on July 5, 2005, and the appeal was docketed in this Court on August 26, 2005. The case was argued orally on November 21, 2005.

Matthew Antonio Stark near their neighborhood basketball courts. Robinson and Stark discussed rumors that "Dread," as they called Jarrett Traylor, planned to "kick [their] butt[s]." Robinson suggested to Stark that they talk with Traylor. Robinson, Stark, and Schiele went to see Traylor at the home of Donald McFarland; Robinson drove his car with Stark in a passenger seat. Schiele rode his bicycle. They were planning to talk, not fight, and were not carrying any weapons. When the trio arrived, Traylor was standing in McFarland's front yard talking with McFarland and Jameel Rasheed. Robinson got out of his car and walked slowly toward Traylor, asking him "what the f ___ is going on." Robinson stayed a short distance from Traylor and did not attempt to touch him. Traylor had his hands behind his back, was looking at Robinson, and took a couple of steps back. Traylor said nothing. Traylor then pulled a black semiautomatic .40 caliber Glock handgun from behind his back, and fired five times. Bullets struck Stark, Schiele's bicycle, and Robinson's car. Neither Schiele nor Stark had entered the yard. Traylor fled. Robinson put the fatally wounded Stark in his car and drove to a hospital. Stark bled to death.

A few weeks before the shooting, Traylor's stepfather, with whom Traylor was living, reported to the police that his black semiautomatic .40 caliber Glock handgun had been stolen from his vehicle. There were no signs of forced entry to the vehicle. During that time frame, Traylor showed Schiele a handgun, and stated, "If anybody messes with me, I'll shoot them." About a week before the shooting, Traylor was seen arguing with Stark and Robinson, and later displayed a black semiautomatic handgun. Traylor remarked that if Robinson ever "came at him with a gun" he would shoot him.

1. The evidence was sufficient to enable a rational trier of fact to find Traylor guilty beyond a reasonable doubt of the felony murder and aggravated assault of Stark. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Traylor contends that the trial court erred by refusing to let him present evidence that he knew Robinson owned and usually carried a handgun. He argues that the trial court improperly excluded such evidence on the basis that it would be inappropriate character evidence, when in fact, it was relevant to the reasonableness of his fear, which was critical for his claim of self-defense. But the argument is unavailing.

As Traylor notes,

[a]s a general rule, a victim's[2] character is not relevant or admissible in the murder trial. There is an exception when

---

[2] Even though Traylor ultimately was acquitted of the charged crimes involving Robinson,

the defendant claims justification and offers evidence that the [victim] was the first aggressor. In Georgia, this exception permits the defendant to present evidence of both the [victim's] general reputation for violence and specific acts of violence against third persons.

(Footnotes omitted.) *Austin v. State*, 268 Ga. 602, 602-603 (2) (492 SE2d 212) (1997). Moreover,

[a] necessary prerequisite to the admission of evidence of a victim's violence is the defendant's establishment of a prima facie showing of justification. [Cit.] A prima facie case of justification requires a showing that the victim was the aggressor, that the victim assaulted the defendant, and that the defendant was honestly trying to defend [him]self. [Cit.]

(Punctuation omitted.) *Harrison v. State*, 268 Ga. 574, 577 (3) (492 SE2d 218) (1997). The trial court determined, inter alia, that Traylor did not make the required threshold showing. And the record supports the determination that Robinson was not the aggressor in the encounter with Traylor, nor did Robinson assault Traylor. Traylor argues that such analysis was inapplicable because the sought evidence did not implicate Robinson's character.

It is certainly true, as Traylor points out, that neither owning nor possessing a firearm, without more, imputes bad character. *Henderson v. State*, 272 Ga. 621, 622 (2) (532 SE2d 398) (2000).[3] However, this Court has required a defendant to establish a prima facie case of justification in the instance in which the defendant seeks to admit evidence of the victim's reputation for carrying a gun. *Cooper v. State*, 249 Ga. 58, 60-61 (2) (287 SE2d 212) (1982). But, even assuming arguendo, as Traylor maintains, that the more appropriate analysis is merely to ask the question whether such evidence is relevant, Traylor still cannot demonstrate that the evidence was improperly excluded.

An acceptable test for relevancy is whether the evidence offered renders the desired inference more probable than it would be without the evidence. *Smith v. State*, 270 Ga. 240, 243 (4) (510 SE2d 1) (1998). Obviously, Traylor desired to have the jury infer that because he knew that Robinson owned and usually carried a handgun, Traylor acted

---

at trial Robinson was an alleged victim of Traylor's, so Robinson is properly considered a victim for purposes of this analysis.

[3] Implicit in the holding is that owning or possessing the firearm is lawful.

out of reasonable fear in firing his weapon.[4] But, the fact that Robinson may have owned or carried a handgun prior to the fatal shooting does not tend to prove that he had a handgun on his person and intended to use it against Traylor when he approached him.[5] Compare *Smith v. State*, supra (incidents involving the defendant and the victim carrying illegal weapons and soliciting another to help commit a robbery and murder were relevant and admissible to defendant's claims of self-defense and voluntary manslaughter); *Gibson v. State*, 176 Ga. 384 (168 SE 47) (1933) (in defendant's claim of self-defense and the presence of evidence that the victim threatened and drew a gun on defendant, it was error to exclude evidence that the victim had a reputation for habitually and notoriously carrying deadly weapons). The relevant inquiry was whether Robinson had a gun on his person at the time of the fatal encounter with Traylor, and the trial court ruled that it would permit Traylor to question Robinson about whether he had a handgun with him at the time of the incident. See *Murphy v. State*, 259 Ga. 388 (383 SE2d 112) (1989).

3. Traylor also contends that the trial court erred by refusing to permit him to present evidence of an incident claimed to have occurred a few months before the shooting in which Stark pointed a gun at Traylor. But, this contention is likewise unavailing. As Traylor concedes, such evidence would implicate Stark's character; therefore, Traylor was required to make the requisite showing that the victim was the aggressor, assaulted him, and that he was honestly trying to defend himself. *Harrison v. State*, supra at 577 (3). Traylor failed to make such a showing with regard to Stark or Robinson. See Division 2, supra. Evidence of the alleged prior incident with Stark could not be used to satisfy Traylor's burden of establishing his prima facie case of justification because such prima facie case must be based upon the res gestae of the crime on trial, not on prior incidents. *Johnson v. State*, 270 Ga. 234, 236 (3) (507 SE2d 737) (1998).

4. Traylor raised the issue of his competency to stand trial in his motion for new trial. See *Florescu v. State*, 276 Ga. App. 264 (623 SE2d 147) (2005). He did so in the context of a claim of ineffective assistance of trial counsel, but he later abandoned the contention of ineffectiveness and pursued the underlying issue of his competence, asserting violations of both procedural and substantive due process. Following a hearing in the matter, at which Traylor's trial counsel and a clinical psychologist and a clinical neuropsychologist who had

---

[4] At trial, Traylor also argued that he sought to admit this evidence in order to challenge Robinson's credibility.

[5] Robinson was not found to have any weapon at the time of the incident.

both examined Traylor testified, the trial court rejected Traylor's procedural and substantive due process claims and denied his motion for new trial.

(a) Citing *Pate v. Robinson*, 383 U. S. 375 (86 SC 836, 15 LE2d 815) (1966), Traylor contends that the trial court violated his right to procedural due process by failing to hold a competency hearing when a bona fide doubt about his competency arose at trial.

Traylor did not, either prior to or during trial, raise the issue of his competency to stand trial or seek a hearing regarding his competency. However, a trial court is to conduct, sua sponte, a competency hearing when there is information which becomes known to it, prior to or at the time of the trial, sufficient to raise a bona fide doubt regarding the defendant's competence. *Collins v. State*, 259 Ga. App. 587 (2) (578 SE2d 201) (2003). The salient question is whether the trial court received information which, objectively considered, should reasonably have raised a doubt about the defendant's competency and alerted the trial court to the possibility that the defendant could neither understand the proceedings, appreciate their significance, nor rationally aid his attorney in his defense. *Collins v. State*, supra at 587 (2); *Baker v. State*, 250 Ga. 187, 190 (1) (297 SE2d 9) (1982). In order to answer this question, the appellate court must focus on any evidence of the defendant's irrational behavior, the defendant's demeanor at trial, and any prior medical opinion regarding the defendant's competence to stand trial. *Collins v. State*, supra. But, such evidence of incompetency, prior to or during trial, was lacking in this case.

Traylor argues that the issue of his incompetency was raised during trial by virtue of certain conflicting responses given to the trial court, which the trial court did not explore, and the fact that the trial court was aware that he was developmentally disabled. First, the trial court did indeed explore some inconsistency in Traylor's responses to questioning. Furthermore, examination of the record fails to demonstrate that either Traylor's behavior at trial or his medical history should have caused the trial court, sua sponte, to conduct a competency hearing.

Just prior to the State resting its case, Traylor's attorney informed the trial court that Traylor would not testify or present any evidence. Outside the jury's presence, the court questioned Traylor regarding his understanding of his rights. Traylor affirmatively stated that he understood his rights, but indicated that he needed to talk further with his attorney before making the decision not to testify. The jury returned to the courtroom, the State rested, the jury was sent to lunch, and then the trial court gave Traylor another 25 minutes to confer with counsel. Traylor returned to the courtroom and stated that he had been given adequate time to speak with his

attorney; however, after Traylor gave somewhat inconsistent responses to the query of whether he agreed with the decision not to testify, his attorney informed the court that Traylor "has certain disabilities and sometimes he has some difficulty understanding and enunciating his words. . . ." Traylor's attorney went on to explain that Traylor was developmentally disabled, took special education classes, and had switched schools several times due to his disabilities, but that he was not retarded or "psychiatrically challenged," just "slow." The court asked for medical or other documentation in that regard, and Traylor's attorney stated that he had educational records, some of which contained the results of psychological testing. The trial court then asked the attorney whether he was representing that Traylor was unable to make certain decisions. The attorney responded that he was not, but was merely trying to explain to the court Traylor's "little bit of a difficulty" in responding to the court's questions. The attorney affirmed for the court that he had reviewed records regarding Traylor's mental competency and learning disability and that Traylor was able to assist in his defense and to understand decisions made at trial. The trial court reviewed these same school records, which in regard to Traylor's medical condition, indicated only that he suffered from and was treated for asthma. The records also indicated that Traylor was "mildly mentally disabled," and had reading and math skills at the elementary school level, and accordingly, had received academic assistance. The trial court stated for the record that it had asked Traylor a series of questions over a three-to-four-day period, that it had directed Traylor to consult with his attorney, that it was comfortable that Traylor understood his right to testify or to choose not to do so, and that Traylor had indeed understood and made the decision not to take the stand. Traylor then affirmed that he understood that he had the right to testify, and that he had chosen not to do so.

Under these circumstances, Traylor has failed to show that, prior to or at the time of trial, there was any evidence of irrational behavior, or unusual demeanor on his part, or any medical opinion regarding his competence which would have caused the trial court to make further inquiry about it, and therefore, Traylor has not shown a violation of procedural due process. *Collins v. State*, supra at 587 (2).

(b) Traylor also insists that his substantive due process rights were violated because he was tried when he was, in fact, not competent to stand trial. He argues that because both the clinical psychologist and clinical neuropsychologist who evaluated him testified at the motion for new trial hearing that he was incompetent at the time of trial, he carried his burden of demonstrating by a preponderance of the evidence that he was incompetent to stand trial, and that in ruling on the motion for new trial, the trial court could not arbitrarily

ignore the experts' testimony in favor of the contrary observations of his trial attorney. He further argues that the trial court's ruling is not entitled to deference by this Court because, inter alia, the trial court applied the wrong burden of proof, in that it applied a "clear and convincing" standard instead of the "preponderance of the evidence" standard required to assess the substantive incompetency claim. We agree that the trial court erred in its treatment of the substantive incompetency claim.

An explanation of the genesis of Traylor's incompetency claim is necessary. Certainly, at the time of trial, Traylor appeared capable of understanding the proceedings, making decisions regarding the trial, and assisting his attorney in his defense. See Division 4 (a), supra. However, approximately four months after trial, the trial court requested a pre-sentence investigation. The resulting report indicated that Traylor's account of significant events in his life raised concerns about his mental state. Approximately 14 months after trial, Traylor's appellate counsel obtained an order from the trial court for Traylor to be examined by clinical neuropsychologist, Dr. Stephen Johnson, for "reasons pertaining to [Traylor's] Motion for New Trial." Four months later, and with the consent of the State and Traylor's appellate counsel, the trial court entered an order for a psychiatric examination of Traylor at Georgia Regional Hospital, where Traylor was evaluated by clinical psychologist, Dr. Pamela Eilender. At the hearing on the motion for new trial, Traylor presented Eilender and Johnson as his sole witnesses. Traylor's trial counsel testified for the State.

It is true that,

> [a] defendant bears the burden of establishing incompetency to stand trial by a preponderance of the evidence, and this burden is consistent with principles of due process. The threshold for competency is easily met in most cases; it exists so long as a defendant is capable at the time of the trial of understanding the nature and object of the proceedings going on against him and rightly comprehends his own condition in reference to such proceedings, and is capable of rendering his attorneys such assistance as a proper defense to the indictment preferred against him demands.

*Lewis v. State*, 279 Ga. 69, 70 (3) (608 SE2d 602) (2005). The trial court's order clearly differentiates Traylor's claim of violation of procedural due process from his claim of denial of substantive due process, and expressly recognizes that Traylor would have to demonstrate his actual incompetence by a preponderance of the evidence. Id. at 70 (3). However, it is plain that at the hearing on the motion for

new trial, the trial court did not attempt to make a determination regarding the substantive issue of Traylor's competency at the time of trial. See *Florescu v. State*, supra. Relying on *James v. Singletary*, 957 F2d 1562 (11th Cir. 1992), a case dealing with a federal habeas petitioner, the trial court focused its inquiry on whether there was sufficient evidence to warrant a further hearing on the question of competency, and therefore, held Traylor to the standard of offering clear and convincing evidence outlined in *James v. Singletary*. Id. at 1572, n. 15. The trial court's imposition of this increased burden on Traylor is problematic for several reasons.

First, *James v. Singletary* affirms that according to precedent in the United States Court of Appeals for the Eleventh Circuit, "a [federal habeas] petitioner is entitled to an evidentiary hearing on a substantive incompetency claim if he or she 'presents clear and convincing evidence to create a "real, substantial and legitimate doubt" ' as to his or her competency." *James v. Singletary* at 1573. This initial showing is required in order to adapt the general principle regarding federal habeas claims that "a habeas petitioner is entitled to an evidentiary hearing on a claim if he or she alleges facts that, if proved at the hearing, would entitle the petitioner to relief" to the specific case of a substantive incompetency claim. *James v. Singletary* at 1574, n. 17. Traylor is not in the position of a federal habeas petitioner, and this Court declines to impose on him the general threshold requirements for adjudication of a claim by a federal habeas petitioner. Id. Traylor can and did raise his claims of incompetency via his motion for new trial. *Florescu v. State*, supra.

Second, the *James v. Singletary* Court interpreted the "clear and convincing" language as "referring to the proffer of proof a petitioner must make, rather than to the burden of proof a petitioner must meet, to receive an evidentiary hearing." Id. at 1573, n. 17. That Court recognized the inherent problems with the requirement of " 'clear and convincing' evidence raising a 'substantial doubt' as to competency" and advocated abolishing it. Id. Pretermitting any constitutional concerns which might be implicated, it would be, at the very least, incongruous in this context, to demand a higher standard for an initial proffer of evidence of incompetence than that required for proof of the substantive claim of actual incompetence to stand trial. The transcript of the motion for new trial hearing makes plain that Traylor believed he was presenting his case to secure a ruling on his substantive claim of incompetency, that is, he was attempting to secure a post-conviction adjudication on the question of competency. *Florescu v. State*, supra; see also *Dyer v. State*, 278 Ga. 656, 661 (8) (604 SE2d 756) (2004). What he did was present expert evidence which called into doubt his competency to stand trial. *Baker v. State*, supra at 190 (1). And the trial court failed to determine whether

Traylor carried his burden of demonstrating his actual incompetency by a preponderance of the evidence.

That portion of the judgment denying Traylor a new trial which was based upon the trial court's finding that Traylor failed to present "clear and convincing evidence to warrant an evidentiary hearing" on his substantive claim of incompetency must be reversed. See *Harris v. State*, 256 Ga. 350, 352 (2) (349 SE2d 374) (1986), which expressly acknowledges the availability of a post-appeal hearing on the question of competency. This Court has outlined the procedure to be followed on remand when a defendant's competency has been cast into doubt and "an error under Georgia law occurs."[6] *Baker v. State*, supra at 192 (1).

> Upon remand the burden first falls upon the [S]tate to show there is sufficient evidence to make a meaningful determination of competency at the time of trial. If the court rules that a determination of appellant's competency at the time of his trial is not presently possible, then a new trial must be granted. If the court decides such a determination is possible, the issue of competency to stand trial must be tried and the appellant shall have the burden to show incompetency by a preponderance of the evidence. The sole issue to be presented to the [factfinder][7] is that of mental competency; evidence as to guilt would be irrelevant. [Cit.] If the [factfinder] finds that the appellant was not mentally competent at the time of his trial, the verdict in the main case must be set aside. On the other hand, if the appellant fails by a preponderance of the evidence to prove incompetence at the time of his trial, the verdict of guilty shall stand.

*Baker v. State*, supra at 193.

Accordingly, this case is remanded to the trial court for action consistent with this opinion. After completion of the proceedings on remand, the judgment may be subject to a right of appeal. Id. Accord *Brogdon v. State*, 220 Ga. App. 31, 34 (3) (467 SE2d 598) (1996).[8]

---

[6] This Court has provided the same remedy when a *Pate* violation occurs. *Baker v. State*, supra at 192 (1).

[7] The right to a special jury under OCGA § 17-7-130 can be waived; however, the defendant must be afforded an adequate hearing on the issue of competency. *Baker v. State*, supra at 190 (1).

[8] Following a finding of competency, "the appropriate standard of appellate review is whether after reviewing the evidence in the light most favorable to the State, a rational trier of fact could have found that the defendant failed to prove by a preponderance of the evidence that he was incompetent to stand trial." *Sims v. State*, 279 Ga. 389, 391 (1) (614 SE2d 73) (2005).

*Judgments affirmed in part and reversed in part and case remanded with direction. All the Justices concur, except Carley, Thompson, and Melton, JJ., who concur in part and dissent in part.*

CARLEY, Justice, concurring in part and dissenting in part.

I fully concur in Divisions 1 through 3 of the majority opinion. With respect to the issue of Traylor's competency to stand trial, addressed in Division 4, I agree with the holding of Subdivision (a) that, on motion for new trial, he failed to show a violation of procedural due process. In Subdivision (b), however, the issue of a post-conviction substantive due process claim of incompetency is addressed for the first time in this state. There, the majority relies on the misguided criticism by a federal court of the accepted procedure regarding the resolution of such claims, which criticism has never been followed or even repeated by any other appellate court, as authority to reverse and remand with direction that the trial court determine Traylor's competency. Because the effect of today's decision is to encourage criminal defendants to raise belated claims of their incompetence and to frustrate the timely administration of justice in this state, I dissent.

Neither the Supreme Court of the United States nor this Court has ever previously recognized a substantive due process competency claim. Compare *Baker v. State*, 250 Ga. 187, 190-192 (1) (297 SE2d 9) (1982) (procedural due process). Thus, the bench and bar of Georgia would expect the majority opinion to discuss the supporting precedent and rationale for such a claim. That discussion is absent. Nevertheless, for the limited purposes of this opinion, I will assume that a separate post-conviction substantive due process claim is available in this state. See *People v. Tenner*, 794 NE2d 238, 247 (Ill. 2003).

Many federal courts and some state courts have recognized that, after conviction, a substantive due process claim of incompetence to stand trial may be viable. However, the universal rule in those courts is that, to demonstrate entitlement to a hearing, the convicted person must make a preliminary showing by clear and convincing evidence of a real, substantial, and legitimate doubt regarding his competence at the time of trial. *Nicks v. State*, 783 S2d 895, 908-909 (II) (Ala. Crim. App. 1999); Yackle, Postconviction Remedies § 133 (2005) (citing *Walker v. Gibson*, 228 F3d 1217 (10th Cir. 2000)). Indeed, the very opinion on which the majority relies adheres to such precedent. *James v. Singletary*, 957 F2d 1562, 1572-1573 (III) (C) (11th Cir. 1992). The majority does not cite, and I have been unable to locate, any contrary authority from any jurisdiction.

In choosing to deviate from that universal procedure, the majority relies on *James v. Singletary*, supra at 1574 (III) (C), fn. 17,

wherein Chief Judge Tjoflat, writing for a three-judge panel of the United States Court of Appeals, criticized, but ultimately followed, that procedure. However, the majority fails to acknowledge that Chief Judge Tjoflat's criticism of the standard procedure is predicated upon a completely erroneous conclusion that, in an evidentiary hearing on a procedural claim, unlike a substantive one, the State is constitutionally required to bear the burden of proving competency. As other courts have implicitly noted, that glaring mistake in *James* soon became obvious when, in *Medina v. California*, 505 U. S. 437 (112 SC 2572, 120 LE2d 353) (1992), the Supreme Court "held that a state may constitutionally place the burden of proof on a defendant at a competency hearing." *Moran v. Godinez*, 40 F3d 1567, 1573 (9th Cir. 1994). The majority itself recognizes that, in this state, the defendant always bears the burden of proof by a preponderance of the evidence in a competency hearing. *Lewis v. State*, 279 Ga. 69, 70 (3) (608 SE2d 602) (2005). However, it nevertheless chooses to rely upon erroneous dicta in non-controlling federal authority, rather than on the previous decisions of this Court.

When the import of *Medina* and *Lewis* is carefully considered, the majority's analysis utterly collapses. Neither the burden nor the standard of proof in evidentiary competency hearings furnishes any distinction between procedural and substantive due process claims. Today's holding has obliterated the only remaining viable distinction, which is in the nature and extent of the initial proffer necessary to obtain an evidentiary hearing. This Court has now become the only court in the nation to eliminate the requirement that the convicted person make a "clear and convincing" preliminary showing of a "substantial doubt" to warrant a post-conviction competency hearing as a matter of substantive due process, and has apparently pressed even farther into untrod territory and entirely abolished the requirement that he or she make any initial proffer whatsoever. The effect of this wholly unsupported ruling is to delay resolution of the issue of competence to stand trial for an indeterminate time without consequence, and to compel the holding of an evidentiary hearing even during or subsequent to appellate proceedings, regardless of whether there is or ever was any reason to doubt the defendant's competence. While purporting to distinguish between substantive and procedural due process competency claims, the majority has actually destroyed the distinction and simultaneously removed all incentive for a timely, non-belated determination of a defendant's competence to stand trial.

In this case, assuming that a distinct substantive due process competency claim is available in Georgia, both the applicable law and the evidence authorized the trial court to find that an evidentiary hearing was unwarranted because there was not clear and convincing evidence of substantial doubt as to competency.

This standard of proof is high; and "the facts must positively, unequivocally, and clearly generate the legitimate doubt." [Cit.] "A [trial] court's determination that there is insufficient evidence to generate a substantial and legitimate doubt as to . . . competence to stand trial is reviewed for clear error." [Cit.]

*Battle v. United States*, 419 F3d 1292, 1299 (I) (11th Cir. 2005). Accordingly, I dissent to Division 4 (b) of the majority's opinion and to that portion of this Court's judgment which reverses and remands with direction.

I am authorized to state that Justice Thompson and Justice Melton join in this dissent.

DECIDED MARCH 13, 2006 —
RECONSIDERATION DENIED APRIL 13, 2006.

*Gerard B. Kleinrock*, for appellant.
*Gwendolyn Keyes Fleming, District Attorney, Barbara B. Conroy, Assistant District Attorney, Thurbert E. Baker, Attorney General, Vonnetta L. Benjamin, Assistant Attorney General*, for appellee.