## A95A2689. BROGDON v. THE STATE.
### (467 SE2d 598)

BLACKBURN, Judge.

Vincent Colin Brogdon appeals his convictions for burglary, OCGA § 16-7-1; criminal damage to property, OCGA § 16-7-23; and one felony and one misdemeanor count of obstruction of an officer, OCGA § 16-10-24. He enumerates nine errors, most of which relate to his competence to stand trial.

The evidence at trial revealed the following. Brogdon and the burglary victim had dated for almost one year before she broke up with him. During the month before the burglary, Brogdon had visited the victim's apartment, but she refused to let him enter. When the burglary occurred, the victim was in the process of moving with the assistance of a male friend. When the victim returned from an errand, she found three windows broken on her friend's truck and the window broken on the sliding glass door to her apartment. Some of her belongings, including a vacuum cleaner, a cordless telephone, and an overnight bag containing jewelry and a camera, were missing. The victim testified that the broken glass door to her apartment had been locked when she left and was locked when she returned. Brogdon's family subsequently returned some of the items to her. On cross-examination, a police officer testified that a neighbor reported that Brogdon, whom he recognized as the victim's former boyfriend, had done the damage.

An arrest warrant was subsequently issued and police officers attempted to arrest Brogdon after observing his car in a parking lot, but Brogdon ran into nearby woods. More officers, police tracking dogs, and a helicopter with a spotlight and an infrared tracking system assisted the officers. An officer called to Brogdon to stop, but he kept running. At one point, Brogdon picked up a tree limb, swung it at one of the pursuing officers and ran. These actions provided the basis for the obstruction charges.

Shortly after his arrest, Brogdon gave a statement indicating he felt the victim had been unfaithful to him with the male friend who helped her move. He stated that on the day of the incident, he let himself into the victim's apartment through the unlocked sliding glass door, heard a man's voice on her answering machine, and noticed she

had thrown a card he sent her in the trash. He admitted he became extremely angry, walked outside, and threw a concrete block through the glass door, then reentered and left with the victim's belongings. He also admitted he smashed the male friend's pickup truck with a portion of the block and took a large box from the back.

Brogdon was subsequently evaluated for competence to stand trial. The evaluation concluded that, despite his paranoid delusions and severe mental illness, Brogdon understood the proceedings and could distinguish right from wrong. The evaluation also noted that Brogdon was a danger to society without the use of medication to treat his paranoid schizophrenia. Brogdon informed the trial court that he disagreed with these findings and did not wish to use the evaluation in his defense.

At trial, Brogdon denied committing the charged offenses or giving the confession and gave rambling and disjointed testimony about a conspiracy to frame him. He testified that the Navy Seals, the Green Beret, and the Marine Recon had conspired with his family to frame him for the charged offenses because he would not "take the number 666." Brogdon stated he was afraid to discuss the conspiracy in the jury's presence. He claimed the arresting officers threatened him with a stun gun attached to a cigarette lighter which emitted a V-shaped flame about three inches wide and poured something in his wounds which burned and caused his hand to swell up for a month. He testified that the Green Beret wanted the others to let Brogdon go so the Navy Seal could shoot him. During redirect, defense counsel moved for a mistrial and requested the appointment of a guardian for Brogdon, stating his character had been placed in issue during cross-examination. The court denied the motion, stating "I don't think in the middle of trial we can turn it into a competency hearing when he [Brogdon] insists he is perfectly competent. And you do insist, don't you, that you are perfectly competent?" Brogdon answered in the affirmative.

Just as closing argument was about to commence, while the jury was entering the courtroom, Brogdon announced that he wanted to address the jury and introduce evidence. After the court motioned for the jury to go back to the jury room and stated that the evidence was closed, Brogdon again demanded to address the jury, asked for his counsel's birth certificate, and then pointed to the spectators, stating "I want to know who these people are, okay?" He also demanded to know why he was not present for his indictment after "being poisoned, being sodomized and putting people in my mouth" during his incarceration. Brogdon then jumped up and had to be restrained by deputies, who removed him from the courtroom. The jury was not in the courtroom when this occurred. The court subsequently instructed the jury not to hold Brogdon's absence against him. While in the

holding cell, Brogdon took a swing at a deputy. Defense counsel again unsuccessfully moved for a mistrial, arguing Brogdon was incompetent and needed further evaluation.

After the jury returned a guilty verdict, the court sentenced Brogdon to twenty years on the burglary count, five consecutive years on the criminal damage to property count, five consecutive years on the felony obstruction count, and twelve concurrent months on the misdemeanor obstruction charge. The trial court ordered that after service of ten years imprisonment, the remaining twenty years could be served on probation. In addition, the court recommended that Brogdon be offered mental health treatment.

1. Initially, we must address the procedural requisites mandated when evidence presented during trial raises the issue of a criminal defendant's competence to stand trial. Brogdon's third, fourth, fifth, and sixth enumerations of error challenge the trial court's actions relating to his competence to stand trial. Brogdon's counsel raised the issue in a second motion for mistrial, two requests for further mental evaluation, and after Brogdon was expelled from the courtroom prior to closing argument.

Criminal defendants have a constitutional right not to be tried while incompetent. *Pate v. Robinson*, 383 U. S. 375 (86 SC 836, 15 LE2d 815) (1966); *Baker v. State*, 250 Ga. 187, 190 (297 SE2d 9) (1982). Courts therefore must inquire into competency and hold a hearing on the issue, even during trial, if evidence raising the issue of incompetence becomes apparent. *Baker*, 250 Ga. at 190. Factors such as a history of irrational behavior, the defendant's demeanor at trial, and prior medical opinions are relevant to deciding whether this inquiry is necessary. *Drope v. Missouri*, 420 U. S. 162, 180 (95 SC 896, 43 LE2d 103) (1975). Upon receiving information which, objectively considered, should reasonably raise a doubt about the defendant's competence, trial courts should conduct a civil proceeding before a special jury, even where state procedures for raising the issue are not followed. Id. The proceeding should focus on the determinative factors of competence: whether the defendant (1) understands the nature and object of the proceedings against him; (2) comprehends his own position in relation to the proceedings; and (3) is capable of assisting in his defense. *Holloway v. State*, 257 Ga. 620, 621 (361 SE2d 794) (1987).

The record is replete with evidence raising the issue of Brogdon's incompetence. The record shows Brogdon had previous treatment for mental illness and the psychiatric evaluation done prior to trial stated he had "severe mental illness that appears to be paranoid schizophrenia." Moreover, his demeanor at trial raised the issue of his competence. For example, Brogdon claimed he ran on the night of his arrest because his mother and aunt gave him a pill that horrified him and

they intended to kill him. He also testified that the burglary charge was fabricated to cover up corruption by government military agencies and his family dealing with his refusal to take the number 666. He had to be physically restrained and removed from the courtroom. The general tenor of both his direct and cross-examination was confused and not grounded in reality and raised the question of whether he could assist in his defense. Under these circumstances, the court was constitutionally required to make an inquiry into Brogdon's competence. Merely asking Brogdon whether he was competent was not a constitutionally adequate inquiry.

To remedy this harmful error, remand for a hearing to determine Brogdon's competence to stand trial is required. *Baker*, 250 Ga. at 193 (1). The State bears the initial burden of showing that the evidence is sufficient to permit a meaningful competency determination. *Sizemore v. State*, 262 Ga. 214, 217 (416 SE2d 500) (1992). Should the court decide that such a determination is not now possible, then Brogdon is entitled to a new trial on the offenses charged and he may again raise the issue of incompetence by special plea pursuant to OCGA § 17-7-130. Id. If the court finds that a determination of competence is feasible based on the available evidence, the issue must be tried to a jury. *Baker*, 250 Ga. at 193. Brogdon will bear the burden of proving incompetency by a preponderance of the evidence. Id. Should this proceeding result in a finding of incompetence, the verdict must be set aside. Id.

We address the remaining issues in the event that Brogdon is found to have been competent at the time of trial.

2. Brogdon argues that the court erred by refusing to grant his first motion for mistrial and his request for appointment of a guardian.

During Brogdon's redirect examination, his counsel moved for mistrial, arguing that the prosecutor had placed Brogdon's character into issue by asking questions he knew would confuse and arouse Brogdon. This argument was not directed to any specific question asked by the prosecutor. No objections or motions were made on that ground during cross-examination. Nor has Brogdon identified any specific question or answer which brought his character into issue and we have found none. The record shows that the prosecutor's questions did not exceed the scope of the matters raised on direct examination and provides no support for Brogdon's claim that the prosecutor placed his character in issue. See *Touchton v. State*, 210 Ga. App. 700, 702 (3) (437 SE2d 370) (1993). Further, the trial court properly denied Brogdon's counsel's verbal request to appoint a guardian during trial because the request did not satisfy the statutory requirements for such appointments. OCGA § 29-5-6.

3. Brogdon argues that, because the evidence was insufficient to

prove his intent to commit the offenses or the illegality of his entry at the scene of the burglary, the trial court erred in denying his motion for directed verdict.

Directed verdicts of acquittal are appropriate only when there is no conflict in the evidence and the evidence with all reasonable deductions and inferences therefrom demands a verdict of acquittal as a matter of law. OCGA § 17-9-1 (a); *Taylor v. State*, 252 Ga. 125, 127 (1) (312 SE2d 311) (1984). Intent may be found upon consideration of the "words, conduct, demeanor, motive, and all other circumstances connected with the act for which the accused is prosecuted." OCGA § 16-2-6. Brogdon's confession provided evidence of his intent to commit criminal damage to property and burglary.[1] As to the obstruction charges, the evidence clearly showed that Brogdon ran from officers and attempted to strike an officer with a tree limb. The evidence of illegal entry was not uncontradicted because the female victim testified that she locked her apartment before the offense occurred. This evidence, viewed in the light most favorable to the verdict, did not demand a directed verdict. *Humphrey v. State*, 252 Ga. 525, 527 (314 SE2d 436) (1984).

4. Brogdon argues that the trial court erred in recharging the jury that (1) intent to commit a theft is an essential element to the offense of burglary; and (2) the intent to steal may be inferred if the evidence shows unlawful entry into the building of another. He maintains that these charges gave the jury the incorrect impression that they must conclude that he entered with the intent to steal.

The trial court's instructions were correct statements of the law. *Brooks v. State*, 146 Ga. App. 519 (246 SE2d 506) (1978) (intent essential element of burglary); *Prothro v. State*, 186 Ga. App. 836 (368 SE2d 793) (1988) (inference of intent). Therefore this enumeration is without merit.[2]

5. Brogdon argues that the trial court erred by instructing the jury that it was not to concern itself with any matters concerning punishment or treatment.

Brogdon fails to explain the basis for this contention and provides no legal authority in support. In any event, the charge, viewed in context, was not improper. *Slaughter v. State*, 217 Ga. App. 449, 451 (3) (459 SE2d 168) (1995).

6. Brogdon contends his sentence constituted cruel and unusual punishment for a first offender with obvious mental problems.

---

[1] Brogdon's admission that he reentered the apartment after breaking the window and took the victim's belongings is particularly notable as proof of intent.

[2] Brogdon also argues that the trial court incorrectly charged that intent to steal could be inferred "where there is no other apparent nature for the entry." Brogdon misquotes the instruction. The trial court's charge correctly used the word "motive" rather than "nature."

Although the sentences are lengthy, they are within the statutory limits and are not so disproportionate as to shock the conscience. *Lambeth v. State*, 257 Ga. 15, 16 (354 SE2d 144) (1987). Thus, this enumeration lacks merit. *King v. State*, 265 Ga. 440 (2) (458 SE2d 98) (1995).

This case is remanded for proceedings consistent with this opinion. Should it be determined that Brogdon was competent to stand trial, the conviction stands affirmed. See *Baker*, 250 Ga. at 193.

*Judgment affirmed in part, reversed in part, and case remanded with direction. McMurray, P. J., and Andrews, J., concur.*

DECIDED JANUARY 26, 1996.

*Wayne L. Burnaine*, for appellant.
*Daniel J. Porter, District Attorney, George F. Hutchinson III, Assistant District Attorney*, for appellee.

