A08A2259. PHELPS v. THE STATE.
(674 SE2d 620)

BERNES, Judge.

Following a jury trial, appellant Kevin Paul Phelps was convicted of aggravated assault, terroristic threats, and burglary. Because the trial court erred in failing to determine whether Phelps was mentally competent to stand trial, we reverse and remand this case to the trial court for proceedings consistent with this opinion.

The evidence viewed in favor of the verdict showed that on the evening of September 15, 2004, Phelps went to the home of his parents, where he banged on the doors and windows and threatened to kill his father. He also used a machete to slash the screen door and break glass out of the front door. Phelps's father obtained a revolver and shot it in Phelps's direction, at which time Phelps fled.

---

Law enforcement officers arrived a short time later and, while they remained at the scene, Phelps returned. After Phelps was placed in handcuffs, he spit on his father and again began threatening to kill him.

The case originally came up for trial in February 2005. Phelps's counsel made an oral motion for a continuance and/or motion for psychological evaluation, expressing concern about Phelps's mental health and requesting additional time so that Phelps could be evaluated. After the trial court granted the continuance, Phelps, who steadfastly maintained that he was mentally competent, promptly fired his trial counsel and refused to undergo a mental evaluation.

The case again came up for trial on the May 2005 calendar. At Phelps's request, the trial court reappointed Phelps's trial counsel immediately prior to conducting a *Jackson-Denno*[1] hearing on May 16, 2005. At the commencement of the hearing, Phelps's attorney asserted that "[i]t's my office's position that [Phelps is] not competent to go to trial at this time." Noting that Phelps previously refused to cooperate with an evaluation and "insists that he wants to go to trial," the trial court proceeded with the hearing.

The trial began on May 18, 2005. Phelps's counsel again moved for a continuance in order that Phelps could undergo a competency evaluation. Phelps's counsel recognized that Phelps did not want to be evaluated and considered himself ready for trial, but specifically argued that

[Phelps's] mental illness produces symptoms of paranoia such that he feels like I am working against him, and he has indicated that he has no trust and competence [sic] in my office. But my main concern . . . is that his mental illness is to such a degree that he is either delusional or does not understand the totality of what's going on and it's my position that without an additional psychological evaluation, it's not appropriate to proceed in this case.

In support of his motion, Phelps's counsel included two mental evaluation reports written by a clinical psychologist who had examined Phelps in April and May 2003 in conjunction with a similar but separate criminal matter. The first report, dated May 6, 2003, addressed specifically Phelps's competency to stand trial for that offense. The report noted that Phelps had "periods of stability and calm, during which he appeared to be capable of rational communication about legal proceedings," but also stated that "[Phelps] still believes that the [c]ourt and others in the legal system are part of a

---

[1] *Jackson v. Denno*, 378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964).

364

[Ku Klux Klan] plot against him." Significantly, the report concluded that "[w]hile [Phelps] has an adequate factual understanding of the legal proceedings, one would question whether he has a rational understanding of them."

The second was a more detailed report that included Phelps's relevant history, such as Phelps's service in the Army and statements from his parents that after he returned from his deployment in Desert Storm "they felt he was like someone they didn't know." The report stated that Phelps had "refused to come to the evaluation[,] . . . had to be subdued by a large number of officers due to physical resistance[,]" and was required to wear cuffs at the ankles and wrists as well as wear a mesh hood to prevent spitting during the meeting. It noted "continuing signs of serious mental illness" and concluded that "[i]t is likely that mental illness was a significant contributor to the alleged offense."

The trial court denied the motion for continuance based on the fact that the trial had previously been continued to provide Phelps the opportunity to get evaluated, which Phelps had refused to do. Following the trial and Phelps's conviction, the prosecutor stated at the sentencing hearing that, "once [Phelps] is sent into the prison system . . . he will be evaluated . . . [and h]is mental condition has to become apparent at that time," and further expressed hope that Phelps would receive the appropriate mental treatment.

1. A criminal defendant's due process right to a fair trial encompasses the right not to be tried or convicted while incompetent to stand trial. *Drope v. Missouri*, 420 U. S. 162 (95 SC 896, 43 LE2d 103) (1975); *Baker v. State*, 250 Ga. 187, 189-190 (1) (297 SE2d 9) (1982). In order to protect this right, Georgia law provides that "[w]henever a plea is filed that a defendant in a criminal case is mentally incompetent to stand trial, it shall be the duty of the court to cause the issue of the defendant's mental competency to stand trial to be tried first by a special jury." OCGA § 17-7-130 (b); *Baker*, 250 Ga. at 189 (1). Although counsel's technical failure to file a plea of mental incompetence may waive a defendant's statutory right to a special jury under OCGA § 17-7-130 (b), "[t]he constitutional guarantees require the trial court to inquire into competency, even where state procedures for raising competency are not followed, if evidence of incompetence comes to the court's attention." *Baker*, 250 Ga. at 190 (1). See *Drope*, 420 U. S. at 177-180 (III), (IV); *Traylor v. State*, 280 Ga. 400, 404 (4) (a) (627 SE2d 594) (2006); *Brogdon v. State*, 220 Ga. App. 31, 33 (1) (467 SE2d 598) (1996).

The factors that must be examined in order to determine whether a criminal defendant's procedural due process rights were violated by a trial court's failure to hold a competency hearing include past evidence of the defendant's irrational behavior, prior

medical opinions that may be relevant to the issue of defendant's competency to stand trial, and the defendant's demeanor at trial. See *Drope*, 420 U. S. at 180 (IV); *Brogdon*, 220 Ga. App. at 33 (1). The ultimate question to be answered is

> whether [the defendant] is capable at the time of the trial of understanding the nature and object of the proceedings going on against him and rightly comprehends his own condition in reference to such proceedings, and is capable of rendering his attorneys such assistance as a proper defense to the indictment preferred against him demands.

*Brown v. State*, 215 Ga. 784, 787 (1) (113 SE2d 618) (1960). See *Holloway v. State*, 257 Ga. 620, 621 (1) (361 SE2d 794) (1987); *Baker*, 250 Ga. at 190 (1).

Here, it is true that prior to the May trial, Phelps's counsel moved for a continuance but never technically filed a written plea that Phelps was mentally incompetent to stand trial. See OCGA § 17-7-130 (b). Nonetheless, Phelps's counsel expressed to the court more than once and in no uncertain terms that he had serious doubts about Phelps's competency, specifically noting that Phelps was paranoid and felt that his counsel was working against his interest. Most importantly, Phelps's counsel informed the trial court that, based upon his personal observations and interactions with Phelps, he feared that Phelps was either delusional or did not understand the proceedings against him. These concerns were supported by the reports from Phelps's 2003 evaluation in which the psychologist expressed doubt that Phelps had a rational understanding of the criminal proceedings that he faced at that time for a similar but separate crime. Moreover, Phelps's father testified during trial that Phelps had previously been diagnosed with a mental illness and, indeed, Phelps's own trial testimony seemed to reflect some level of paranoia. Given this evidence, it was incumbent on the trial court to conduct a hearing to determine Phelps's competency to stand trial.[2] See *Holloway*, 257 Ga. at 621-622 (3); *Baker*, 250 Ga. at 190-192 (1); *Brogdon*, 220 Ga. App. at 33-34 (1).

---

[2] Although we recognize a trial court's potential frustration with a criminal defendant who insists on his own sanity and refuses to subject himself to a mental evaluation, the defendant's behavior may itself be a product of mental illness. See *Pate v. Robinson*, 383 U. S. 375, 384 (II) (86 SC 836, 15 LE2d 815) (1966) (noting that "it is contradictory to argue that a defendant may be incompetent, and yet knowingly or intelligently waive his right to have the court determine his capacity to stand trial") (punctuation omitted); *Lindsey v. State*, 252 Ga. 493, 495 (I) (314 SE2d 881) (1984) (citing expert testimony that the defendant's refusal to cooperate with a psychological evaluation may itself be indicative of the defendant's need for mental help).

Upon remand[,] the burden first falls upon the state to show there is sufficient evidence to make a meaningful determination of competency at the time of trial. If the court rules that a determination of appellant's competency at the time of his trial is not presently possible, then a new trial must be granted. If the court decides such a determination is possible, the issue of competency to stand trial must be tried and the appellant shall have the burden to show incompetency by a preponderance of the evidence. The sole issue to be presented to the jury is that of mental competency; evidence as to guilt would be irrelevant. If the jury finds that the appellant was not mentally competent at the time of his trial, the verdict in the main case must be set aside. On the other hand, if the appellant fails by a preponderance of the evidence to prove incompetence at the time of his trial, the verdict of guilty shall stand.

(Citation omitted.) *Baker*, 250 Ga. at 193 (1). See *Lindsey v. State*, 252 Ga. 493, 497 (IV) (314 SE2d 881) (1984); *Brogdon*, 220 Ga. App. at 34 (1).

2. We need not address Phelps's remaining enumeration of error in light of our holding in Division 1.

*Judgment reversed and case remanded. Andrews, P. J., and Doyle, J., concur.*

DECIDED MARCH 2, 2009.

*John W. Sherrer, Jr.*, for appellant.
*Denise D. Fachini, District Attorney, Barbara A. Becraft, Assistant District Attorney*, for appellee.