**FIFTH DIVISION**
**REESE, P. J.,**
**MARKLE and COLVIN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**September 9, 2020**

# In the Court of Appeals of Georgia

A20A1446. RILEY v. THE STATE.                    MA-049C

MARKLE, Judge.

Following a jury trial, Coleman Riley was convicted of rape (OCGA § 16-6-1), and giving false information to a law enforcement officer (OCGA § 16-10-25), and was sentenced as a recidivist to life imprisonment. He now appeals from the denial of his motion for new trial, arguing that (1) the trial court erred in (a) sua sponte granting a new trial at the conclusion of his original trial; (b) not seeking a competency hearing; and (c) allowing evidence of similar transactions; (2) the evidence was insufficient to convict him; and (3) he was improperly sentenced as a recidivist. After a thorough review of the record, we affirm.[1]

---

[1] This case has taken a lengthy route to this Court. Riley was convicted in 2014, and has had several different attorneys between his arrest, first and second trials, the motion for new trial, and the various amendments to the motion for new trial, before

Viewing the evidence in the light most favorable to the verdict, *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979), the record shows that, in May 2013, the victim spent the evening at a friend's house, where she had been drinking. At some point, she left the house and was walking home when she encountered Riley, and they started talking. Riley offered the victim a beer, and she accepted, following him to his rooming house.

Once in Riley's room, the two began smoking drugs as Riley paced around the room. He started pulling at the victim's top expecting sex, saying, "well you done drunk my beer and smoked my stuff." The victim told him no and the two started to "tussle." The victim scratched Riley along his back and arms, and they both ended up on the mattress on the floor. During the struggle, the victim threw some condoms at Riley, which made him angry, and he threw her onto the bed, pinned her down, and removed her pants. He penetrated her vagina with his penis as the victim told him to stop. Afterward, Riley said, "I guess you're going to go back and tell now."

The victim was able to leave, found someone to help her, and was transported to the hospital. At the hospital, the victim spoke with police and gave a description

his appeal was docketed in this Court in 2020. Appellate counsel notes that in the interim, Riley's file has been lost and he has been unable to access certain documents.

of her attacker, and she later picked his photograph out of a lineup. The doctor who examined the victim found abrasions between her vagina and anus, consistent with the use of force, and noted that the victim stated she had been choked.

Based on the victim's account, an Atlanta police detective went to the rooming house where the victim said the attack occurred. There, he encountered a man matching the victim's description. When the detective asked the defendant his name, the defendant responded, "Tony Riley." The detective ran the name through the database and found no match. The defendant also gave the detective the names Tony Davis and Riley Coleman, with different birth dates and social security numbers. None of these names matched the database. The detective brought the defendant to the station, where fingerprints identified the defendant as Riley Coleman.

In his interview with police, Riley initially denied knowing the victim, and he stated he got the scratches on his arm from poison ivy.[2] He later admitted that he knew the victim and that he gave her $10 to buy drugs; they smoked the drugs together; and then he paid her $5 for sex. He explained that the victim scratched him when he refused to give her more money. Riley also admitted giving police a false name when he first encountered the officer at the rooming house.

---

[2] Riley's interview was admitted into evidence and played for the jury.

Based on this attack, Riley was charged with rape and giving false information to a law enforcement officer. Following a four-day trial, the jury convicted him of both counts. However, at the conclusion of his initial trial, the trial court realized it had committed error when it permitted an employee of the district attorney's office to sit on the jury. The trial court initially stated that it intended to declare a mistrial, but later clarified that it could not grant a mistrial after the jury had rendered its verdict and, instead, sua sponte granted a new trial under OCGA § 5-5-40. The trial court then stated that the new trial would begin the following Monday, to which trial counsel responded, "fine."

At the second trial, the victim again testified to the attack. The State then called several women whom Riley had attacked in the past, as well as the police officers who investigated those prior incidents.[3] The State also introduced Riley's prior conviction for rape and aggravated sodomy, as well as a prior indictment for aggravated assault and sexual battery. The first victim testified that, in 2012, Riley grabbed her breasts while she was at his apartment playing cards, and that, when she

---

[3] The State gave proper notice of this evidence. Prior to the testimony, Riley objected to the police officer's testimony as hearsay, improper bolstering, and cumulative. The trial court overruled the objection, but gave the jury a limiting instruction before the officer testified.

4

tried to leave, Riley grabbed her and placed his hands around her neck. As a result of this incident, Riley pled guilty to misdemeanor sexual battery.

The second victim testified that, in 1999, Riley grabbed her as she was walking to the train, offered her money for sex, and, after she agreed, Riley placed both hands around her neck, pushed her to the ground, and forced her to have sex. The third victim stated that, in 2004, she met Riley and agreed to smoke crack cocaine with him, but, as she went with him, he grabbed her around the neck, choked her, pulled her pants down, and forced her to perform oral sex before penetrating her vaginally. Riley was still on top of her when police arrived. Riley ultimately pled guilty to aggravated assault with intent to rape in connection with this attack.

At the close of the second trial, the jury again convicted Riley, and the trial court sentenced him as a recidivist to life imprisonment for the rape, with a concurrent 12-month sentence for giving false information to a law enforcement officer.[4]

Riley filed a motion for new trial, arguing that the trial court erred in granting the mistrial after the verdict in the first trial and ordering a new trial before the

---

[4] The State gave proper notice of its intent to seek recidivist sentencing under OCGA § 17-10-7 (a) and (c).

5

transcript was prepared; it was error to admit the similar transaction evidence; and trial counsel was ineffective in failing to seek a competency hearing.

At the motion hearing, Riley testified that he had spent time in a mental health facility, and trial counsel testified that she had not seen anything that would have supported a mental health defense. The trial court denied the motion for new trial, and Riley now appeals.

1. In his first enumeration of error, Riley argues that the trial court committed plain error when it declared a de facto mistrial after the jury's verdict in the first trial, and that he has been prejudiced as a result, especially due to the unavailability of the transcripts prior to his second trial. He asserts that this Court is not bound by the trial court's nomenclature, and can look at the substance of the trial court's order to determine that the trial court granted a de facto mistrial. He further contends that it was error to schedule the second trial to begin the following Monday, as opposed to placing it on the docket under OCGA § 5-5-48, and that this quick rescheduling confirms that the trial court granted a mistrial instead of a new trial. He argues that allowing the trial court's ruling to stand would essentially nullify the rule against a post-verdict mistrial. We are not persuaded.

It is well-settled that a trial court cannot grant a mistrial after the jury renders its verdict. *State v. Sumlin*, 281 Ga. 183, 184 (1) (637 SE2d 36) (2006); *State v. Chapman*, 322 Ga. App. 82, 83 (744 SE2d 77) (2013). But, OCGA § 5-5-40 (h) authorizes the trial court to sua sponte grant a new trial within 30 days from entry of the judgment.

Here, although the trial court initially stated that it would grant a mistrial due to the error of seating an improper juror, it ultimately recognized that it could not grant a mistrial post-verdict.[5] The trial court then sua sponte granted a new trial.

Contrary to Riley's argument, there is no confusion about the trial court's actions. The nomenclature and the substance of the trial court's order are the same; the trial court exercised its authority under OCGA § 5-5-40 (h) to sua sponte grant a new trial. *Chapman*, 322 Ga. App. at 83.

Moreover, when the trial court announced its ruling, and scheduled the second trial to begin the following week, trial counsel responded that it was "fine." Having acquiesced to the decision, Riley cannot complain of it on appeal. *Hornbuckle v.*

---

[5] Under *Beam v. State*, 260 Ga. 784, 785-786 (2) (400 SE2d 327) (1991), overruled on other grounds by *Willis v. State*, 304 Ga. 686, 706 (11) (a) (820 SE2d 640) (2018), full-time employees of district attorney's offices must be excused from the jury pool if challenged for cause.

*State*, 300 Ga. 750, 756 (5) (797 SE2d 113) (2017); *Robinson v. State*, 299 Ga. 648, 651 (3) (791 SE2d 13) (2016) ("This matter has not been preserved for purposes of appeal. Because Robinson acquiesced in the trial court's action by voicing satisfaction with it, Robinson cannot complain about the trial court's ruling."). Regardless, Riley has offered nothing to show how he was prejudiced by the trial court's ruling or the prompt re-trial. Cf. OCGA § 5-5-50 ("The first grant of a new trial shall not be disturbed by an appellate court unless the appellant shows that the judge abused his discretion in granting it and that the law and facts require the verdict notwithstanding the judgment of the presiding judge.").

To the extent that Riley argues it was error to order a new trial without the benefit of the transcripts from the first trial, and that he was entitled to free transcripts to prepare for the second trial, he cannot show any harm or prejudice. A trial court may rule on a motion for new trial without the benefit of the transcripts. See OCGA § 5-5-40 (c); *Holmes v. State*, 180 Ga. App. 787, 788 (4) (350 SE2d 497) (1986); see also Uniform Superior Court Rule 41.1 (trial court may hear motion for new trial prior to preparation of transcripts). Moreover, a review of the transcript from the second trial shows that counsel was able to question witnesses about prior testimony

to bring out any inconsistencies even without the benefit of the transcript from the first trial.

Finally, as to Riley's contention that the trial court erred in placing the new trial on the docket the following week, we discern no error. Under OCGA § 5-5-48, "[w]hen a new trial has been granted by the court, the case shall be placed on the docket for trial as though no trial had been had[.]" And, under OCGA § 17-8-1 (a), "[t]he cases on the criminal docket shall be called in the order in which they stand on the docket unless the accused is in jail or, otherwise, *in the sound discretion of the court*." (emphasis supplied)). As such, the trial court was authorized, in its discretion, to set the new trial for the following week. Moreover, OCGA § 5-5-48 does not prohibit the trial court from setting the trial more quickly.

2. Riley next argues that his convictions must be reversed because there is no evidence that he was competent to stand trial. He points to his testimony at the motion for new trial hearing in which he stated that he understood the trial court had granted a mistrial rather than a new trial, and that he spent several years in a mental health facility. We discern no reversible error.[6]

_____

[6] The State contends that Riley did not preserve this argument. The record shows that Riley's initial trial counsel filed an ex parte motion for a competency evaluation, and the trial court ordered an evaluation, but the record does not include

"A criminal defendant's due process right to a fair trial encompasses the right not to be tried or convicted while incompetent to stand trial." (Citations omitted.) *Phelps v. State*, 296 Ga. App. 362, 364 (1) (674 SE2d 620) (2009). Generally, we presume a defendant is mentally competent. OCGA § 16-2-3; *Powers v. State*, 314 Ga. App. 733, 734-735 (1) (b) (725 SE2d 848) (2012). Nevertheless, under OCGA § 17-7-130 (b) (1), a defendant may move the trial court to order a competency evaluation. But, once competency has been determined, "the appropriate standard of appellate review is whether after reviewing the evidence in the light most favorable to the State, a rational trier of fact could have found that the defendant failed to prove by a preponderance of the evidence that he was incompetent to stand trial." (Citation and footnote omitted.) *Sims v. State*, 279 Ga. 389, 391 (1) (614 SE2d 73) (2005). The

---

an evaluation report or any other documentation with regard to this issue. Riley's subsequent trial counsel was unaware of the ex parte motion. And, in his motion for new trial, Riley argued only that trial counsel was ineffective in failing to address his mental health issues; he did not argue that he was not competent to stand trial. Pretermitting whether Riley preserved his competency argument, and in light of the fact that trial courts have an independent obligation to ensure the defendant is competent to stand trial if there is any cause for concern, we address this issue on the merits. See OCGA § 17-7-129 (a); see also *Baker v. State*, 250 Ga. 187, 189-190 (1) (297 SE2d 9) (1982) (waiver of statutory right to special jury on competency issue did not waive trial court's independent duty).

10

defendant bears the burden of establishing incompetency. *Traylor v. State*, 280 Ga. 400, 406 (4) (b) (627 SE2d 594) (2006).

Here, Riley has not met his burden. The record shows that Riley's first trial counsel filed an ex parte motion for a competency evaluation, which the trial court granted. The record, however, contains no evaluation results or copies of any medical or psychological reports. And appellate counsel did not call the trial counsel who requested the evaluation to testify at the motion for new trial hearing. See *Simpson v State*, 238 Ga. App. 109, 113-114 (3) (517 SE2d 830) (1999) (physical precedent only) (finding no error where the results of court ordered evaluation were not included in the record, and explaining that the trial court has no obligation to inquire into the results). Cf. *Strong v. State*, 263 Ga. 587, 590 (5) (436 SE2d 213) (1993) (no error in failure to sua sponte order competency hearing where there was no evidence defendant was incompetent). Riley testified at the motion for new trial hearing that he took medication for a sleep disorder and schizophrenia following a head injury in 1998. But, trial counsel testified that Riley understood the nature of the charges against him, was able to assist in his defense, and understood the roles of the attorneys and judge. She stated that she did not seek a hearing on Riley's competency because Riley never mentioned his mental health issues and she believed there was

11

no basis to raise a mental health defense. As such, Riley has not met his burden to show there was a question as to his competency to stand trial. *Sims*, 279 Ga. at 391 (1).

Moreover, the fact that the trial court ordered an evaluation does not lead to the conclusion that Riley was incompetent to stand trial. A defendant is presumed to be competent, and, "[a] court need not accept an expert's testimony on the defendant's mental state, but may rely on its own observations and the basic presumptions permitted by law." *Flesche v. State*, 254 Ga. App. 3, 5 (1) (561 SE2d 160) (2002); see also OCGA § 16-2-3. "The fact that the court allowed the trial to go forward after testimony concerning Appellant's competency is in effect a sub silentio finding that he was competent." *Harris v. State*, 256 Ga. 350, 352 (2) (349 SE2d 374) (1986).

Additionally, nothing in the record would have triggered the trial court's sua sponte obligation to inquire into Riley's competency. See OCGA § 17-7-129 (a) (the trial court has a duty to sua sponte inquire into a defendant's competency where it has information that raises a bona fide question of competency); see also *Beach v. State*, 351 Ga. App. 237, 241-242 (2) (b) (830 SE2d 565) (2019).

Whether a competency evaluation is warranted depends on

whether the trial court received information which, objectively considered, should reasonably have raised a doubt about the defendant's competency and alerted the trial court to the possibility that the defendant could neither understand the proceedings, appreciate their significance, nor rationally aid his attorney in his defense.

(Citations omitted.) *Traylor v. State*, 280 Ga. 400, 404 (4) (a) (627 SE2d 594) (2006). The focus is on three factors: "(1) evidence of the defendant's irrational behavior; (2) the defendant's demeanor at trial; and (3) prior medical opinion regarding the defendant's competence to stand trial. Such an analysis focuses on what the trial court did in light of what it knew at the time of the trial or plea hearing." (Citations omitted.) *Johnson v. State*, 209 Ga. App. 514, 516 (2) (433 SE2d 717) (1993).

Here, Riley contends that his confusion over whether the trial court granted a mistrial or a new trial shows that he did not understand the proceedings. But, this alone does not show that the trial court had an obligation to inquire into Riley's competency. See *Palmer v. State*, 303 Ga. 810, 814 (II) (814 SE2d 718) (2018); *Traylor*, 280 Ga. at 405 (4) (a). The fact that Riley did not understand that the trial court granted a new trial rather than a mistrial does not show that he did not understand the nature of the proceedings, especially where the trial court initially indicated that it *would* grant a mistrial and only changed its order after conducting

13

research. Moreover, there is no evidence in the record of any irrational behavior or other conduct that would have triggered the trial court's independent duty. Under these facts, Riley cannot meet his burden to show that he was not competent to stand trial.

3. Riley next argues that his conviction for rape must be reversed because the trial court failed to conduct the requisite three-part test under OCGA § 24-4-404 (b) ("Rule 404 (b)") before admitting the evidence of similar transactions. We discern no error.

We review a trial court's evidentiary rulings for abuse of discretion. *McCoy v. State*, 332 Ga. App. 626, 628 (774 SE2d 179) (2015).

The State contends that Riley did not preserve the alleged error because he did not object to the evidence on this ground in the trial court.[7] Our review of the record shows that, during the second trial, trial counsel objected to the officers' testimony on the ground that it was cumulative and bolstered earlier testimony, but counsel did

---

[7] The State argues that the officers' testimony concerning the prior acts was admissible. Although Riley objected to the officers' testimony as cumulative and bolstering the victims' testimonies, he makes a different argument on appeal. Thus, he has abandoned his previous objection. *Patterson v. State*, 327 Ga. App. 695, 698 (3) (761 SE2d 101) (2014).

not argue that the evidence failed to satisfy the three-prong test under Rule 404 (b).[8]

Because the record confirms that Riley raises his challenge to the evidence under

Rule 404 (b) for the first time on appeal, our review is limited to plain error. *Gates*

*v. State*, 298 Ga. 324, 326 (3) (781 SE2d 772) (2016); see also OCGA § 24-1-103 (d).

> To meet his burden under plain error, Riley must show the following:
>
> First, there must be an error or defect—some sort of deviation from a legal rule—that has not been intentionally relinquished or abandoned, i.e., affirmatively waived, by the appellant. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it affected the outcome of the trial court proceedings. Fourth and finally, if the above three prongs are satisfied, the appellate court has the discretion to remedy the error—discretion which ought to be exercised only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings.

(Citations and punctuation omitted.) *Gates*, 298 Ga. at 327 (3). Riley cannot meet this

burden.

---

[8] Prior to the start of the second trial, counsel objected to the Rule 404 (b) evidence with respect to the victims in the 1999 and 2102 attacks on the grounds that the incidents were not similar. The State responded that these events were admissible under Rule 413. The trial court found the evidence admissible.

15

Riley's challenge to the admissibility of the similar transactions under Rule 404 (b) is misplaced because the evidence was admissible under OCGA § 24-4-413 (a) ("Rule 413 (a)"). *Edmondson v. State*, 336 Ga. App. 621, 626 (2) (785 SE2d 563) (2016). The State provided notice of its intent to rely on these prior criminal acts under both OCGA § 24-4-404 (b) and 24-4-413. OCGA § 24-4-413 (b). And the trial court found that the prior incidents were admissible under Rule 413.

OCGA § 24-4-413 (a) provides:

In a criminal proceeding in which the accused is accused of an offense of sexual assault, evidence of the accused's commission of another offense of sexual assault shall be admissible and may be considered for its bearing *on any matter to which it is relevant*.

(Emphasis supplied.) The statute defines "offense of sexual assault" to include rape. OCGA § 24-4-413 (d) (1); OCGA § 16-6-1 (a). As we have explained, Rule 413

supersede[s] the provisions of OCGA § 24-4-404 (b) in sexual assault . . . cases, and create[s] a rule of inclusion, with a strong presumption in favor of admissibility as [it] provides that such evidence shall be admissible. Thus, the State can seek to admit evidence under these provisions for any relevant purpose, including propensity.

16

(Citations and punctuation omitted.) *Dixon v. State*, 341 Ga. App. 255, 258 (1) (800 SE2d 11) (2017).[9] Because Riley was on trial for rape, his prior instances of rape, sexual battery, and aggravated assault with intent to rape were properly before the jury under Rule 413. And, as the evidence was admissible under Rule 413, Riley's challenge to the evidence under Rule 404 (b) fails.

4. Riley next contends that there was insufficient evidence to support his conviction for giving false information to a law enforcement officer because there was no proof the information was false or that he intended to mislead the officer. This argument is without merit.

In support of his argument, Riley notes that his name is frequently identified as "Riley Coleman." But he offers no other argument for his claim that the evidence was insufficient. Nevertheless, our review of the record shows that there was sufficient evidence for the jury to find that Riley intentionally gave a false name to the investigating officer.

---

[9] Evidence admitted under Rule 413 is subject to the balancing test set out in OCGA § 24-4-403 ("Rule 403"). *Dixon*, 341 Ga. App. at 260 (1) (b). Riley does not argue that the Rule 403 balancing test required the evidence to be excluded. Thus, we do not address this analysis.

On appeal from a criminal conviction, we view the evidence in the light most favorable to the jury's verdict, and the defendant is no longer presumed innocent. Thus, in evaluating the sufficiency of the evidence, we do not assess witness credibility or weigh the evidence, but only determine if the evidence was sufficient for a rational trier of fact to find the defendant guilty of the charged offenses beyond a reasonable doubt. And the verdict will be upheld so long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case.

(Citations and punctuation omitted.) *Johnson v. State*, 351 Ga. App. 690, 692 (832 SE2d 676) (2019).

OCGA § 16-10-25 provides "[a] person who gives a false name, address, or date of birth to a law enforcement officer in the lawful discharge of his official duties with the intent of misleading the officer as to his identity or birthdate is guilty of a misdemeanor." Notably, "whether the requisite intent is manifested by the circumstances is a question for the trier of fact, and, on review, this court will not disturb the factual determination unless it is contrary to the evidence and clearly erroneous." (Citation and punctuation omitted.) *Flanders v. State*, 230 Ga. App. 316, 317 (2) (496 SE2d 344) (1998).

18

Here, the evidence showed that the officer encountered Riley outside his rooming house while investigating the victim's allegation of rape; the officer asked Riley his name and Riley gave several different names, social security numbers, and birth dates, none of which matched any information in the police database; and police did not learn his true identity until Riley was fingerprinted at the police station. In his interview, Riley admitted that he gave the police a false name. It was for the jury to determine intent, and this evidence was sufficient for the jury to convict Riley of giving false information to a law enforcement officer. See *Ceballos v. State*, 345 Ga. App. 714, 717 (1) (815 SE2d 89) (2018).

To the extent that Riley contends that there is confusion about whether he gave a false name because he has two first names and two last names and his speech pattern made "Coleman" sound like "Tony," we are not persuaded. There is no evidence in the record – and indeed Riley points to none – to support either claim.

5. In his final enumeration of error, Riley argues that the trial court erred by sentencing him as a recidivist under OCGA § 17-10-7 (a) and (c) because both subdivisions cannot be applied to the same case and should not be read together. He acknowledges, however, that this Court has held to the contrary.

19

Riley did not challenge his prior convictions for purposes of enhancing his sentence under OCGA § 17-10-7, and thus he has waived it. *von Thomas v. State*, 293 Ga. 569, 572-573 (2) (748 SE2d 446) (2013) (both the Supreme Court of Georgia and this Court have routinely held that a defendant may waive challenges to the predicate offenses used to sentence him as a recidivist); see also *Barstad v. State*, 329 Ga. App. 214, 219 (2) (b) (764 SE2d 453) (2014). But, to the extent that Riley's argument concerning his recidivist sentence would render the sentence void, such an argument would not be waived. See *Parham v. State*, 342 Ga. App. 754, 756 (1), n. 1 (805 SE2d 264) (2017).

OCGA § 17-10-7 (a) provides:

any person who, after having been convicted of a felony offense in this state . . . and sentenced to confinement in a penal institution, commits a felony punishable by confinement in a penal institution shall be sentenced to undergo the longest period of time prescribed for the punishment of the subsequent offense of which he or she stands convicted, provided that, unless otherwise provided by law, the trial judge may, in his or her discretion, probate or suspend the maximum sentence prescribed for the offense.

Additionally, under OCGA § 17-10-7 (c),

20

any person who, after having been convicted under the laws of this state for three felonies . . . commits a felony within this state shall, upon conviction for such fourth offense or for subsequent offenses, serve the maximum time provided in the sentence of the judge based upon such conviction and shall not be eligible for parole until the maximum sentence has been served.

As Riley concedes, our Supreme Court has explained that these provisions must be read together. *Blackwell v. State*, 302 Ga. 820, 829 (4) (809 SE2d 727) (2018); see also *Reason v. State*, 353 Ga. App. 266, 269-270 (2) (836 SE2d 223) (2019) (acknowledging precedent and finding no error in sentence under both subsections). As a result, there is no merit to Riley's argument that the trial court erred in sentencing him as a recidivist under both provisions.

For the foregoing reasons, the trial court properly denied Riley's motion for a new trial, and we affirm.

*Judgment affirmed. Reese, P. J., and Colvin, J., concur*.